**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| OSAIC WEALTH, INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. _____ |
| v. | ) | |
| | ) | |
| CHRISTOPHER AMBROSE AND JEAN | ) | **COMPLAINT** |
| AMBROSE, AS TRUSTEES OF THE JEAN | ) | |
| AMBROSE AND CHRISTOPHER AMBROSE | ) | |
| TRUST, GWEN GORMAN, ROBERT | ) | |
| GORMAN, THOMAS HARROLD, CARL | ) | |
| PEDIGO, AND JOHN STRATTON, | ) | |
| | ) | |
| Defendants. | | |

**NATURE OF THE ACTION**

1. This action seeks to enjoin the above-named Defendants, who are improperly attempting to pursue claims in a FINRA arbitration against Plaintiff, broker-dealer Osaic Wealth, Inc., ("Osaic" or "Plaintiff").[1]

2. In short, Defendants have no legal basis to force Osaic to arbitrate these claims in the FINRA forum. This Action is intended to prevent Defendants' improper efforts such that each Defendant may pursue any claims against Osaic only in the proper forum, a court of competent jurisdiction.

---

[1] The arbitration is pursued by Defendants against Triad Advisors LLC, a formerly registered broker-dealer now known as Osaic. On August 23, 2024, Triad Advisors, LLC merged into Osaic.

The terms Triad or Osaic may be used interchangeably in this Complaint to refer to the same entity at different points in time (and because Defendants have named Triad in the FINRA arbitration). All relief sought is on behalf of Osaic and, when appropriate, also on behalf of former entity Triad.

1

3. The FINRA arbitration filed by Defendants, among others, is captioned *Michael Zima et al. v. Triad Advisors LLC*, FINRA No. 24-01626 (the "FINRA Arbitration"). In that action, Defendants' counsel has attempted to group together twenty claimants to sue Osaic concerning purported investments purchased through three individuals, James Walesa ("Walesa"), Kenneth Luccioni ("Luccioni"), and Stephen Denari ("Denari"). In substance, Defendants claim that Walesa, Luccioni, and/or Denari recommended certain investments that were not suitable for them. (*See* FINRA Arbitration Amended Statement of Claim ("ASOC"),[2] attached hereto as **Exhibit A**).[3]

4. Luccioni was an independent contractor formerly associated with Osaic, but left in 2016. Walesa was also once an independent contractor of Osaic, but left in 2019. Denari was an independent contractor associated with Osaic and remains associated with Osaic today.

5. Claimants' allegations stem primarily from two groups of investments: *First*, Claimants allege losses from their decisions to invest with Walesa, Luccioni, and/or Denari in alternative investments, including in the oil and gas industry, and *second*, Claimants allege claims related to investments with Walesa, Luccioni, and/or Denari in companies in which Walesa held an interest.

6. Claimants premise their rights to arbitration on Rule 12200 of the FINRA Code of Arbitration for Customer Disputes (the "Code"), which provides that a FINRA member must arbitrate a dispute if (a) required by written agreement; or (b) requested by a "customer;" the dispute is between a "customer" and a member; and the dispute arises in connection with the business activities of the member firm. (*See* FINRA Rule 12200.)

---

[2] The claimants in the FINRA Arbitration filed a Motion to Amend the Statement of Claim on October 22, 2024, seeking to add three new claimants to the arbitration, including Defendant Stratton.

[3] The Amended Statement of Claim differs from the original Statement of Claim only by the addition of three additional claimants.

7. The Defendants do not have written agreements to arbitrate with Triad.

8. The Defendants are not "customers" of Triad.

9. On October 1, 2024, Triad filed a "Special Appearance Answer and Affirmative Defenses," in FINRA which objected to the arbitrability of claims brought by non-customers and expressly reserved the right to pursue an injunction against those non-customers in court. *See* Special Appearance Answer and Affirmative Defenses, attached hereto as **Exhibit B**.

10. In the ASOC, conspicuously absent are the date of purchases of the purported investments at issue by Defendants. Upon information and belief, these investments were purchased many years ago. By way of example, Luccioni, who purportedly sold these investments, has not associated with Triad for roughly eight (8) years and Walesa, who also purportedly sold these investments, has not been associated with Triad for roughly five (5) years.

11. The age of the purported investments at issue is critical because Triad can only determine if any of the twenty Claimants in the FINRA Arbitration were ever customers of Triad from a review of its records. Pursuant to relevant rules on the retention of broker-dealer records, broker-dealers like Triad are not required to retain records indefinitely.

12. In its Special Appearance Answer, Triad explained that it was conducting an investigation of its records to determine which of the claimants were non-customers before it could proceed to Court but filed a "Special Appearance Answer" because the time required to conduct that investigation was longer than the time required to file an Answer. *See* Ex. B.

13. Triad conducted a good-faith search of its records and determined it has no record of Defendants having any customer relationship with Triad generally, let alone any evidence of purported sales of the investments at issue to Defendants as set forth in the ASOC. (*See* Declaration of Gregory Curley, attached hereto as **Exhibit C**).

3

14. Triad's review of records showed that Defendants (i) never had an account with Triad; (ii) Triad never provided any investment services to Defendants; and (iii) Triad never entered any agreements to arbitrate with Defendants. Ex. C ¶ 9.

15. Triad's review of records also showed that it has no record of any (i) customer account matching the name of the Defendants; (ii) receipt of any compensation from Defendants; and (iii) communications with Defendants. Ex. C ¶ 10.

16. Based upon Triad's review of its records, combined with the fact that Defendants, who have the burden in the FINRA Arbitration to show they were, in fact, customers of Triad, have failed to show any such evidence whatsoever, it is indisputable that Defendants were not "customers" of Triad under the FINRA Code.

17. Accordingly, because Defendants are not customers of Triad under Rule 12200 of the FINRA Code, Defendants' claims in the ASOC are not arbitrable in FINRA.

18. Triad does not dispute that the FINRA Arbitration should proceed with respect to the claimants who were customers.[4]

19. Triad will be prejudiced, without any adequate remedy at law, if forced to proceed in the FINRA Arbitration as to non-customers such as Defendants.

20. In short, there is no legal basis upon which Triad can be forced to arbitrate the claims asserted by Defendants in the FINRA Arbitration against Triad, which also relate to age-old investments, because Defendants are not and never were Triad's "customers" under the FINRA Code. Defendants' pursuit of claims against Triad in that forum should be enjoined.

---

[4] However, Triad has requested that FINRA sever each claimant's claims into separate arbitrations, as they are improperly joined together in one untenable twenty-claimant arbitration. The Panel in the FINRA Arbitration has not yet granted claimants' motion.

21. Further, Triad seeks a declaratory judgment that Defendants are not and were customers of Triad, and therefore have no basis to compel FINRA arbitration of their claims against Triad.

## PARTIES

22. Plaintiff Osaic is a Delaware corporation with its main office located at 18700 Hayden Road, Suite 255, Scottsdale, AZ 85255.

23. Osaic is the successor to Triad.

24. Triad is a formerly registered broker dealer and member of FINRA and Osaic is a currently registered broker dealer and member of FINRA.

25. Upon information and belief, as stated in the ASOC, Defendants Christopher Ambrose, Jean Ambrose, Gwen Gorman, Robert Gorman, Thomas Harrold, and Carl Pedigo are residents and citizens of the State of Illinois ("Illinois Defendants"), and Defendant John Stratton is a resident and citizen of the State of Texas.

## JURISDICTION AND VENUE

26. Plaintiff brings this action to request to obtain a declaratory judgment and for temporary restraining order pursuant to Federal Rules of Civil Procedure 57 and 65, and 28 U.S.C. §§ 2201 and 2202.

27. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiff is a Delaware corporation and has its principal place of business in the state of Arizona. Defendants are residents of either Illinois or Texas.

28. Therefore, every Plaintiff is diverse from every Defendant.

29. The amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

30. Furthermore, the Court has personal jurisdiction over the Illinois Defendants because they are residents and citizens of the State of Illinois and the Court has personal jurisdiction over all of the Defendants, including Defendant Stratton, because they have submitted to FINRA Arbitration in Chicago, Illinois, thereby consenting to jurisdiction in this Court.

31. Venue is proper in this district under 29 U.S.C. § 1391(a)(2) based upon the ASOC, wherein all Defendants have sought to arbitrate within this District in the FINRA Arbitration.

## FACTUAL BACKGROUND

32. The following purported facts are those set forth by Defendants in the ASOC filed in the FINRA Arbitration.

33. Defendants Christopher and Jean Ambrose have made claims against Triad as Trustees of the Jean Ambrose and Christopher Ambrose Trust (the "Trust"). (**Ex. A** at ASOC ¶ 11.) The Trust inherited the investments at issue from the William Tosch Living Trust in 2019. (*Id.*) Mr. Tosch was introduced to Mr. Walesa and Stephen Denari by his accountant, and Defendants Ambrose now claim losses of "at least $100,000" based upon these undisclosed investments. (*Id.*) Defendants Ambrose reside in Chicago, Illinois. (*Id.*)

34. Defendants Gwen and Robert Gorman allege they "were induced to invest with Mr. Walesa because of the trusting relationship Mr. Walesa had with [their relatives,] the Heinemann family." (**Ex. A** at ASOC ¶ 5.) Defendants Gorman allege only that Mr. Walesa "recommended they invest in Longhorn" (*Id.*), but do not allege any losses as a result of Mr. Walesa's conduct. In fact, Defendants Gorman do not even allege that they actually invested in Longhorn or any of the companies at issue in this case. (*Id.*) Defendants Gorman reside in Dundee, Illinois. (*Id.*)

35. Defendant Thomas Harrold was introduced to Mr. Walesa through a friend and alleges that he invested $25,000 with Mr. Walesa, in addition to an undisclosed amount of Clearday

6

stock purchased at a later date. (**Ex. A** at ASOC ¶ 9.) Defendant Harrold does not allege any losses as a result of these purported investments. (*Id*.) Defendant Harrold resides in Hoffman Estates, Illinois. (*Id*.)

36. Defendant Carol Pedigo alleges that he invested $50,000 with Mr. Walesa in 2019. (**Ex. A** at ASOC ¶ 6.) Defendant Pedigo does not allege any losses as a result of this purported investment. (*Id*.) Defendant Pedigo resides in Chicago, Illinois. (*Id*.)

37. Defendant John Stratton alleges he invested $332,500 "across several investments recommended to him by Mr. Walesa, including Trident Healthcare, Longhorn Lodging, and Shadow Retail" and that he has incurred "substantial losses" as a result thereof. (**Ex. A** at ASOC ¶ 15.) Defendant Stratton resides in Hurst, Texas. (*Id*.)

38. On or about October 22, 2024, twenty Claimants, including Defendants, filed their Motion to Amend the Statement of Claim and the ASOC naming Triad as Respondent (*See* **Ex. A**.)

39. Collectively, Defendants' purported claims concern alleged investments in LJM Preservation and Growth Fund ("LJM") and/or companies in which non-party and former Triad representative Walesa held an ownership or investment interest. (*See* **Ex. A**.)

40. In the ASOC, the Defendants do not disclose any details about these purported investments, or how Triad was associated with these Defendants, other than vague allegations that some of the Defendants received communication on Triad letterhead. (S*ee* **Ex. A**.)

41. Defendants' ASOC asserts the following claims against Triad, all concerning the suitability of the purported investments at issue, and related allegations of supervision by Triad related to the same: (I) Breach of Fiduciary Duty; (II) Suitability; (III) Fraudulent or Negligent Misrepresentations and Omissions; (IV) Violation of FINRA Rules 2010, IM-2310-2, and 2020;

(V) Failure to Supervise; (VI) Fraudulent Inducement to Hold Investment; and (VII) Breach of Contract. (*See* **Ex. A**.)

42. Triad was not involved in the sale or recommendation of any of the alleged investments at issue to Defendants. (*See* **Ex. C**.)

43. Osaic has no record that Defendants ever had accounts with Triad. (*Id*.)

44. Osaic has no record that Triad ever provided any investment services or other services to Defendants. (*Id*.)

45. Osaic has no record that Defendants ever entered into any agreement with Triad to arbitrate any claims. (*Id*.)

46. Oasic has no record of any customer account profiles under Defendants' names. (*Id*.)

47. Osaic has no record that Triad ever received any compensation from Luccioni, Walesa, or Denari as a result of Defendants' purported investments. (*Id*.)

48. Osaic has no records of any type of communications between Triad and Defendants. (*Id*.)

49. As such, Defendants have never been "customers" of Triad as the term is defined by the FINRA Code and corresponding, well-established case law.

50. Defendants have no right to adjudicate their purported claims against Triad in the FINRA Arbitration, and Triad does not consent to adjudication of Defendants' claims against Triad in the FINRA Arbitration.

## FIRST CLAIM FOR RELIEF

### (DECLARATORY JUDGEMENT AS TO NON-ARBITRABILITY – 28 U.S.C. § 2201)

51. The preceding paragraphs are re-alleged and incorporated herein by reference.

52. An actual, present, and justiciable controversy has arisen between the parties as to whether Defendants are customers of Osaic within the meaning of FINRA Code of Arbitration Procedure Rule 12200.

53. Osaic seeks a declaration that Defendants are or were customers of Triad, and that Defendants are precluded from pursing their claims within the FINRA Arbitration.

## SECOND CLAIM FOR RELIEF

### (INJUNCTIVE RELIEF)

54. The preceding paragraphs are re-alleged and incorporated herein by reference.

55. Triad seeks a temporary restraining order, preliminary injunction, and permanent injunction enjoying the Defendants and their respective agents, servants, employees, and attorneys, and each of them, from pursuing their claims against Triad in the FINRA Arbitration.

56. Triad has not agreed or consented to arbitrate any dispute with any of the Defendants.

57. Osaic is (and Triad was) a member of FINRA, and none of the Defendants are "customers" of Triad or Osaic within the meaning of FINFINRA RA Rule 12200, which requires member firms to arbitrate customer disputes at the request of the customer. *See Bensadoun v. Jobe-Riat*, 316 F.3d 171 (2d Cir. 2003).

58. Defendants have asserted claims for money damages against Triad in the FINRA Arbitration and, unless enjoined, will continue to pursue such claims to obtain a judgement.

59. Triad does not dispute that the FINRA Arbitration should proceed with respect to the claimants who were customers of Triad.

60. Unless Defendants are enjoined, Osaic will suffer irreparable harm because it will be obliged to defend itself in the FINRA Arbitration and risk an adverse outcome in those proceedings.

In this Circuit and elsewhere, being compelled to arbitrate a dispute one has not agreed to arbitrate constitutes irreparable harm as a matter of law. *Chicago School Reform Board of Trustees v. Diversified Pharm. Servs., Inc.*, 40 F. Supp. 2d 987, 996 (N.D. Ill. 1999) ("forcing a party to arbitrate a dispute that it did not agree to arbitrate constitutes *per se* irreparable harm") (citing *McLaughlin Gormley King Co. v. Terminix Int'l Co.*, 105 F.3d 1192, 1194 (8th Cir. 1997); *PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 515 (3d Cir. 1990); *Mount Ararat Cemetery v. Cemetery Workers and Greens Attendants Union, Local 365*, 975 F. Supp. 445, 447 (S.D.N.Y. 1997)).

61. Triad has no adequate remedy at law, because any post-award challenge by Triad to an arbitrator's award in the FINRA Arbitration would still require Triad, in the first instance, to defend itself in an arbitration proceeding to which it did not consent.

62. Defendants will suffer no irreparable harm in the event a restraining order and/or injunction issues, as Defendants will still be able to pursue their alleged claims against Triad in an appropriate judicial forum.

63. The balance of equities tilts decidedly in favor of Triad which, if no restraining order and/or injunction issues, would be forced to defend itself in a forum to which it did not consent.

64. The public interest would be served by prohibiting Defendants from pursuing their claims against Triad in a forum to which Triad did not consent, and requiring Defendants to pursue such claims, if at all, in an appropriate judicial forum.

**PRAYER FOR RELIEF**

WHEREFORE, Osaic is entitled to judgment as against Defendants:

i. Preliminarily and permanently enjoining Defendants from proceeding in any way with the FINRA Arbitration; and

    ii.       Declaring that Defendants' dispute with Osaic (or Triad) is not arbitrable;

    iii.      Awarding Triad all attorney's fees and other costs associated with this Action; and

    iv.      Awarding any other and further relief that the Court deems is just and proper.

Respectfully submitted this 9th day of December 2024.

                        */s/ Alison Cooney*
                        Alison S. Cooney (Illinois Bar No. #6312577)

                        NELSON MULLINS RILEY & SCARBOROUGH, LLP
                        123 N. Wacker Drive, Suite 2100
                        Chicago, IL 60606
                        P: (312) 376-1023
                        F: (312) 264-9491
                        alison.cooney@nelsonmullins.com

                        Scott N. Sherman (Georgia Bar #642090) (*Pro hac vice* forthcoming)
                        NELSON MULLINS RILEY & SCARBOROUGH, LLP
                        201 17th Street NW, Suite 1700
                        Atlanta, Georgia 30363
                        scott.sherman@nelsonmullins.com

                        *Attorneys for Plaintiff Osaic Wealth, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 9, 2024, I electronically filed the foregoing *Osaic Wealth, Inc.'s Complaint* with the Clerk of Court using the CM/ECF system and sent a copy of same via first-class mail, postage prepaid, to:

| | |
|---|---|
| Adam J. Gana | Jonathan Kurta |
| Adam J. Weinstein | Robert Van De Veire |
| GANA WEINSTEIN LLP | Hannah Ross |
| 345 Seventh Avenue | KURTA LAW |
| 21st Floor | 295 Madison Avenue |
| New York, New York 10001 | Suite 705 |
| | New York, New York 10017 |

Dated this 9th day of December, 2024

*/s/ Alison S. Cooney*
Alison S. Cooney (Illinois Bar No. #6312577)