**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| OSAIC WEALTH, INC.,<br><br>Plaintiff,<br>v.<br><br>CHRISTOPHER AMBROSE AND JEAN AMBROSE, AS TRUSTEES OF THE JEAN AMBROSE AND CHRISTOPHER AMBROSE TRUST, GWEN GORMAN, ROBERT GORMAN, THOMAS HARROLD, CARL PEDIGO, AND JOHN STRATTON,<br><br>Defendants. | ) | CIVIL ACTION NO. 1-24-cv-12657<br><br>**THIRD AMENDED COMPLAINT** |

## NATURE OF THE ACTION

1. This action seeks to enjoin the above-named Defendants, who are improperly attempting to pursue claims in a FINRA arbitration against Plaintiff, broker-dealer Osaic Wealth, Inc., ("Osaic" or "Plaintiff").[1]

2. In short, Defendants have no legal basis to force Osaic to arbitrate these claims in the FINRA forum. This Action is intended to prevent Defendants' improper efforts such that each Defendant may pursue any claims against Osaic only in the proper forum, a court of competent jurisdiction.

[1] The arbitration is pursued by Defendants against Triad Advisors LLC, a formerly registered broker-dealer now known as Osaic. On August 23, 2024, Triad Advisors, LLC merged into Osaic.

The terms Triad or Osaic may be used interchangeably in this Complaint to refer to the same entity at different points in time (and because Defendants have named Triad in the FINRA arbitration). All relief sought is on behalf of Osaic and, when appropriate, also on behalf of former entity Triad.

**Procedural Background: FINRA Arbitration and Osaic's Original Complaint.**

3. On or about July 29, 2024, a group of claimants including Defendants Christopher and Jean Ambrose, as Trustee of the Jean Ambrose and Christopher Ambrose Trust, Robert and Gwen Gorman, Thomas Harrold, and Carl Pedigo, initiated a FINRA arbitration captioned *Michael Zima et al. v. Triad Advisors LLC*, FINRA No. 24-01626. (*See* FINRA Arbitration Original Statement of Claim ("SOC"),[2] attached hereto as **Exhibit A**.)

4. Defendant John Stratton was not a claimant in the initially filed FINRA Arbitration.

5. On October 22, 2024, the claimants in the FINRA Arbitration filed a Motion to Amend the Statement of Claim, seeking to add three new claimants to the arbitration, including Defendant Stratton (the "FINRA Arbitration"). (*See* FINRA Arbitration Amended Statement of Claim ("ASOC"), attached hereto as **Exhibit B**.)

6. In the FINRA Arbitration, Defendants' counsel has grouped together twenty claimants to sue Osaic concerning purported investments allegedly recommended by two individuals, James Walesa ("Mr. Walesa") and Stephen Denari ("Mr. Denari").[3] In substance, Defendants claim that Mr. Walesa and/or Mr. Denari recommended investments that were not suitable for them.

7. Mr. Walesa was also once an independent contractor of Osaic, but left in 2019. Mr. Denari was an independent contractor associated with Osaic and remains associated with Osaic today.

8. Defendants allege that they invested through Mr. Walesa and/or Mr. Denari in companies in which Mr. Walesa held an interest.

---

[3] Although some Claimants in the FINRA Arbitration allege their broker was Kenneth Luccioni ("Luccioni"), none of the Defendants make that allegation.

9. Claimants premise their rights to arbitration on Rule 12200 of the FINRA Code of Arbitration for Customer Disputes (the "Code"), which provides that a FINRA member must arbitrate a dispute if (a) required by written agreement; or (b) requested by a "customer;" the dispute is between a "customer" and a member; and the dispute arises in connection with the business activities of the member firm. (*See* FINRA Rule 12200.)

10. On October 1, 2024, Osaic filed a "Special Appearance Answer and Affirmative Defenses," in FINRA responding to the Original Statement of Claim, which objected to the arbitrability of claims brought by non-customers and expressly reserved the right to pursue an injunction against those non-customers in court. (*See* Special Appearance Answer and Affirmative Defenses, attached hereto as **Exhibit C**.)

11. However, Osaic did not sign the FINRA Submission Agreement at that time because it objected to the arbitrability of Defendants' (a subset of the claimants) claims.

12. On November 8, 2024, Claimants in the FINRA Arbitration filed a motion to compel Osaic to sign the FINRA Submission Agreement.

13. On November 18, 2024, Osaic opposed this motion and explained that it has not yet executed the FINRA Submission Agreement because it does not agree to arbitrate with non-customers, i.e., Defendants.

14. Osaic further explained that it had been diligently conducting a review of its records to confirm that it had no record of a customer-relationship with Defendants, the review was almost complete, and that it would seek to enjoin the Defendants from arbitrating.

15. On December 9, 2024, Osaic filed a complaint for declaratory judgment and injunctive relief in this action. (ECF No. 1). On December 10, 2024, Osaic submitted a copy of the complaint to the Panel in the FINRA Action.

16. On December 10, 2024, this Court granted Plaintiff Osaic leave to amend its Complaint to address subject matter jurisdiction by December 20, 2024. On December 20, 2024, Osaic filed an Amended Complaint.

17. On December 23, 2024, this Court granted the plaintiff leave to amend the Amended Complaint to address subject matter jurisdiction by January 10, 2025.

18. In the interim, on December 10, 2024, Osaic signed a modified FINRA Submission Agreement, which is a standard form document that applies to all Claimants, where Osaic added the following language:

> Respondent agrees to arbitrate this matter only with respect to those Claimants who held a customer relationship with Triad Advisors LLC ("Triad"). With respect to those Claimants who never held a customer relationship with Triad, Respondent has filed an action for declaratory judgment and injunctive relief in the United States District Court for the Northern District of Illinois (the "Injunction Action") to enjoin the following Claimants from proceeding in this arbitration (or any FINRA arbitration proceeding):
>
> - Christopher and Jean Ambrose, as Trustee of the Jean Ambrose and Christopher Ambrose Trust;
> - Robert and Gwen Gorman;
> - Thomas Harrold; and
> - Carl Pedigo.
>
> Accordingly, Respondent maintains its objections with respect to these Claimants and does not agree to arbitrate their claims in the FINRA forum. John Stratton, whom Claimants seek to add as a Claimant in the Motion to Amend, is also a non-customer and has been named as a Defendant in the Injunction Action. As such, in the event that Claimants' Motion to Amend is granted, Respondent similarly maintains its objections and will not agree to arbitrate Mr. Stratton's claims in the FINRA forum.

(Osaic's First Submission Agreement, attached hereto as **Exhibit D**).

19. On December 10, 2024, a virtual hearing was held on Claimants' Motion to Compel Osaic to sign the Submission Agreement where Osaic's counsel confirmed it had filed its complaint in court regarding enjoining the FINRA Arbitration as to non-customers of Triad and stated that it

should be permitted to modify the Submission Agreement as set forth in **Exhibit D** as it does not consent to the submission to FINRA arbitration for non-customers of Triad.

20. Right after the hearing concluded on Claimant's Motion to Compel Osaic to sign the Submission Agreement, FINRA sent a 'deficiency notice' rejecting the Submission Agreement which contained Osaic's agreement to arbitrate only some of the claims. (FINRA Deficiency Notice, attached hereto as **Exhibit E**).

21. Then, on December 13, 2024, the FINRA Panel issued an order on Claimants' Motion to Compel Osaic to sign the Submission Agreement.

22. The FINRA Panel granted the Motion to Compel Osaic to sign the Submission Agreement, ordering Osaic to sign the Submission Agreement but documenting that the "submission agreement must be submitted pursuant to [FINRA] rules and that the "The recently submitted submission agreement that was altered is insufficient." Furthermore, the Panel ordered the submission agreement in unaltered form be submitted within seven days but recognizing that "Respondent has made strenuous objections against filing a submission agreement in the form that FINRA requires and the submission agreement to be filed is only being signed based upon the panel's order to do so to avoid sanctions." (FINRA Order, attached hereto as **Exhibit F**).

23. Osaic proceeded with complying with the Order under protest and signed the FINRA Submission Agreement by order of the FINRA Panel, having already filed a complaint in this court seeking injunctive relief.

24. FINRA has not yet served Osaic with the Amended Statement of Claim Service Packet, a service document which encloses the ASOC for service, Claimants' new FINRA Submission Agreements for the ASOC, and new FINRA Submission Agreements for Osaic.

25. Osaic has not yet filed an Answer to the ASOC or signed a FINRA Submission Agreement for the ASOC, which as set forth above includes John Stratton – a non-customer of Triad.

26. In the ASOC, conspicuously absent are the date of purchases of the purported investments at issue by Defendants. These investments were purchased many years ago. By way of example, Mr. Walesa, who also purportedly sold these investments, has not been associated with Osaic for roughly five (5) years.

27. The age of the purported investments at issue is critical because Osaic can only determine if any of the twenty Claimants in the FINRA Arbitration were ever customers of Osaic from a review of its records. Pursuant to relevant rules on the retention of broker-dealer records, broker-dealers like Osaic are not required to retain records indefinitely.

28. In its Special Appearance Answer, Osaic explained that it was conducting an investigation of its records to determine which of the claimants were non-customers before it could proceed to Court but filed a "Special Appearance Answer" because the time required to conduct that investigation was longer than the time required to file an Answer. *See* Ex. C.

29. Osaic conducted a good-faith search of its records and determined it has no record of Defendants having any customer relationship with Osaic generally, let alone any evidence of purported sales of the investments at issue to Defendants as set forth in the ASOC. (*See* Declaration of Gregory Curley, attached hereto as **Exhibit G**).

30. Osaic's review of records showed that Defendants (i) never had an account with Osaic; (ii) Osaic never provided any investment services to Defendants; and (iii) Osaic never entered any agreements to arbitrate with Defendants. Ex. G ¶ 9.

31. Osaic's review of records also showed that it has no record of any (i) customer account matching the name of the Defendants; (ii) receipt of any compensation from Defendants; and (iii) communications with Defendants. Ex. G ¶ 10.

32. Based upon Osaic's review of its records, combined with the fact that Defendants, who have the burden in the FINRA Arbitration to show they were, in fact, customers of Osaic, have failed to show any such evidence whatsoever, it is indisputable that Defendants were not "customers" of Osaic under the FINRA Code.

33. Accordingly, because Defendants do not have agreements to arbitrate and are not customers of Osaic under Rule 12200 of the FINRA Code, Defendants' claims in the ASOC are not arbitrable in FINRA.

34. Osaic does not dispute that the FINRA Arbitration should proceed with respect to the claimants who were customers of Osaic.

35. Osaic will be prejudiced, without any adequate remedy at law, if forced to proceed in the FINRA Arbitration as to non-customers such as Defendants.

36. In short, there is no legal basis upon which Osaic can be forced to arbitrate the claims asserted by Defendants in the FINRA Arbitration against Osaic, which also relate to age-old investments, because Defendants are not and never were Osaic's "customers" under the FINRA Code. Defendants' pursuit of claims against Osaic in that forum should be enjoined.

37. Further, Osaic seeks a declaratory judgment that Defendants are not and were not customers of Osaic, and therefore have no basis to compel FINRA arbitration of their claims against Osaic.

## **PARTIES**

38. Plaintiff Osaic is a Delaware corporation with its principal place of business located at 18700 Hayden Road, Suite 255, Scottsdale, AZ 85255. Its state of incorporation is Delaware.

39. Osaic is the successor-in-interest to Triad.

40. Triad is a formerly registered broker dealer and member of FINRA and Osaic is a currently registered broker dealer and member of FINRA.

41. Defendants Christopher Ambrose and Jean Ambrose, Gwen Gorman and Robert Gorman, Thomas Harrold, and Carl Pedigo, collectively the "Illinois Defendants," are all citizens of Illinois.

42. Defendants Christopher Ambrose and Jean Ambrose are citizens of Illinois.

43. Defendants Gwen Gorman and Robert Gorman are citizens of Illinois.

44. Defendant Thomas Harrold is a citizen of Illinois.

45. Defendant Carl Pedigo is a citizen of Illinois.

46. Defendant John Stratton is a citizen of Texas.

## JURISDICTION AND VENUE

47. Plaintiff brings this action to request to obtain a declaratory judgment and for injunctive relief pursuant to Federal Rules of Civil Procedure 57 and 65, and 28 U.S.C. §§ 2201 and 2202.

48. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiff is a Delaware corporation and has its principal place of business in the state of Arizona. Defendants are citizens of either Illinois or Texas.

49. Therefore, complete diversity of citizenship exists as between Plaintiff and all Defendants.

50. The amount in controversy, exclusive of interest and costs, exceeds $75,000.00 because Defendants in the underlying FINRA Arbitration seek recovery of compensatory damages, "consisting of what a well-managed account would have performed," statutory damages, and punitive damages exceeding $75,000.

51. Defendants Christopher Ambrose and Jean Ambrose allege losses of at least $100,000 in compensatory damages, plus damages "consisting of what a well-managed account would have performed," statutory damages, and punitive damages in the FINRA Arbitration.

52. Defendant John Stratton seeks recovery of losses of an investment of $332,500 in compensatory damages, plus damages "consisting of what a well-managed account would have performed," statutory damages, and punitive damages in the FINRA Arbitration. Stratton alleges that he "fears" his investment has "been lost."

53. Defendants Gwen Gorman and Robert Gorman seek recovery of an unidentified investment sum including recovery of compensatory damages, damages "consisting of what a well-managed account would have performed," statutory damages, and punitive damages in the FINRA Arbitration.

54. Upon information and belief, based on the allegations in the FINRA Amended Statement of Claims, Plaintiff has a good-faith basis for believing that Defendants Gwen Gorman and Robert Gorman are seeking compensatory damages in the FINRA arbitration that is not less than the amount sought by any other Defendant in this action.

55. Defendant Thomas Harrold seeks recovery of $25,000, plus an additional unidentified investment sum including compensatory damages, damages "consisting of what a well-managed account would have performed," statutory damages, and punitive damages in the FINRA Arbitration.

56. Defendant Carl Pedigo seeks recovery of compensatory damages of his $50,000 investment plus damages "consisting of what a well-managed account would have performed," statutory damages, and punitive damages in the FINRA Arbitration.

57. In the FINRA Arbitration, the Defendants alleged that assessing punitive damages against Osaic is "wholly warranted due to the firm's intentional and willful failure to oversee its agents activities." *See* Exhibit B (Point VII-Damages).

58. There is no cap on the award of punitive damages awarded in a FINRA arbitration, it is reasonable and plausible that Defendants will recover two to four times the amount of compensatory damages sought by each defendant, which results in an award of damages in excess of $75,000 to each Defendant.

59. In the FINRA Arbitration, the Defendants also seek recovery of 'well-managed portfolio' damages. These damages are a measure of compensatory damages and the FINRA Arbitrator's Guide authorizes arbitrators to award these type of damages. [4]It defines these damages as:

> Well-Managed Portfolio Account
>
> This measure of damage allows the claimant to recover the difference between what the claimant's account made or lost versus what a well-managed account, given the investor's objectives, would have made during the same time period

FINRA Arb. Guide at 67.[5]

59. Based on the allegations and theory of damages, all Defendants plausibly allege damages north of $75,000. Moreover, even though Defendants Gwen Gorman and Robert Gorman, Thomas Harrold, and Carl Pedigo do not allege specific dollar amounts in their claims

---

[4] FINRA Arbitrator's Guide, available online at, https://www.finra.org/sites/default/files/arbitrators-ref-guide.pdf.
[5] Available online at, https://www.finra.org/sites/default/files/arbitrators-ref-guide.pdf

for relief in the FINRA Arbitration in excess of $75,000, because Osaic's Third Amended Complaint for declaratory and injunctive relief against these Defendants arises out of the same case or controversy as Defendants Christopher Ambrose and Jean Ambrose, and John Stratton, the Court may exercise supplemental jurisdiction under 28 U.S.C. § 1367 over the claims of Defendants Gwen Gorman and Robert Gorman, Thomas Harrold, and Carl Pedigo.

60. The Court has personal jurisdiction over the Illinois Defendants because they are citizens of the State of Illinois and the Court has personal jurisdiction over all of the Defendants, including Defendant Stratton, because they have initiated a FINRA Arbitration in Chicago, Illinois, thereby consenting to jurisdiction in this State.

61. Venue is proper in this district under 28 U.S.C. § 1391 because all Defendants have sought to arbitrate within this District in the FINRA Arbitration.

## FACTUAL BACKGROUND

62. The following purported facts are those set forth by Defendants in the ASOC filed in the FINRA Arbitration.

63. All of the Defendants allege that they fear their entire investments have been lost. (**Ex. B** at ASOC.)

64. Defendants Christopher and Jean Ambrose have made claims against Osaic as Trustees of the Jean Ambrose and Christopher Ambrose Trust (the "Trust"). (**Ex. B** at ASOC ¶ 11.) The Trust inherited the investments at issue from the William Tosch Living Trust in 2019. (*Id.*) Mr. Tosch was introduced to Mr. Walesa and Mr. Denari by his accountant, and Defendants Jean and Christopher Ambrose now claim losses of "at least $100,000" based upon these undisclosed investments. (*Id.*)

65. Defendants Gwen and Robert Gorman allege they "were induced to invest with Mr. Walesa because of the trusting relationship Mr. Walesa had with [their relatives,] the Heinemann family." (**Ex. B** at ASOC ¶ 5.) Defendants Gwen and Robert Gorman allege only that Mr. Walesa "recommended they invest in Longhorn" (*Id.*), but do not allege any losses as a result of Mr. Walesa's conduct. In fact, Defendants Gwen and Robert Gorman do not even allege that they actually invested in Longhorn or any of the companies at issue in this case. (*Id.*)

66. Defendant Thomas Harrold was introduced to Mr. Walesa through a friend and alleges that he invested $25,000 with Mr. Walesa, in addition to an undisclosed amount of Clearday stock purchased at a later date. (**Ex. B** at ASOC ¶ 9.) Defendant Harrold does not allege any losses as a result of these purported investments. (*Id.*)

67. Defendant Carl Pedigo alleges that he invested $50,000 with Mr. Walesa in 2019. (**Ex. B** at ASOC ¶ 6.) Defendant Pedigo does not allege any losses as a result of this purported investment. (*Id.*)

68. Defendant John Stratton alleges he invested $332,500 "across several investments recommended to him by Mr. Walesa, including Trident Healthcare, Longhorn Lodging, and Shadow Retail" and that he has incurred "substantial losses" as a result thereof. (**Ex. B** at ASOC ¶ 15.)

69. On or about October 22, 2024, twenty Claimants, including Defendants, filed their Motion to Amend the Statement of Claim and the ASOC naming Osaic as Respondent. (*See* **Ex. B**.)

70. Collectively, Defendants' purported claims concern alleged investments in companies in which non-party and former Osaic representative Mr. Walesa held an ownership or investment interest. (*See* **Ex. B**.)

71. In the ASOC, the Defendants do not disclose any details about these purported investments, or how Osaic was associated with these Defendants, other than vague allegations that some of the Defendants received communication on Osaic letterhead. (S*ee* **Ex. B**.)

72. Defendants' ASOC asserts the following claims against Osaic, all concerning the suitability of the purported investments at issue, and related allegations of supervision by Osaic related to the same: (I) Breach of Fiduciary Duty; (II) Suitability; (III) Fraudulent or Negligent Misrepresentations and Omissions; (IV) Violation of FINRA Rules 2010, IM-2310-2, and 2020; (V) Failure to Supervise; (VI) Fraudulent Inducement to Hold Investment; and (VII) Breach of Contract. (*See* **Ex. B**.)

73. Osaic was not involved in the sale or recommendation of any of the alleged investments at issue to Defendants. (*See* **Ex. F**.)

74. Osaic has no record that Defendants ever had accounts with Osaic. (*Id*.)

75. Osaic has no record that Osaic ever provided any investment services or other services to Defendants. (*Id*.)

76. Osaic has no record that Defendants ever entered into any agreement with Osaic to arbitrate any claims. (*Id*.)

77. Osaic has no record of any customer account profiles under Defendants' names. (*Id*.)

78. Osaic has no record that Osaic ever received any compensation from Mr. Walesa or Mr. Denari as a result of Defendants' purported investments. (*Id*.)

79. Osaic has no records of any type of communications between Osaic and Defendants. (*Id*.)

80. As such, Defendants have never been "customers" of Osaic as the term is defined by the FINRA Code and corresponding, well-established case law.

81. Defendants have no right to adjudicate their purported claims against Osaic in the FINRA Arbitration, and Osaic does not consent to adjudication of Defendants' claims against Osaic in the FINRA Arbitration.

**FIRST CLAIM FOR RELIEF**

**(DECLARATORY JUDGMENT AS TO NON-ARBITRABILITY – 28 U.S.C. § 2201)**

82. The preceding paragraphs are re-alleged and incorporated herein by reference.

83. An actual, present, and justiciable controversy has arisen between the parties as to whether Defendants are customers of Osaic within the meaning of FINRA Code of Arbitration Procedure Rule 12200.

84. Osaic seeks a declaration that Defendants are or were not customers of Osaic, and that Defendants are precluded from pursing their claims within the FINRA Arbitration.

**SECOND CLAIM FOR RELIEF**

**(INJUNCTIVE RELIEF)**

85. The preceding paragraphs are re-alleged and incorporated herein by reference.

86. Osaic seeks a preliminary injunction and permanent injunction enjoying the Defendants and their respective agents, servants, employees, and attorneys, and each of them, from pursuing their claims against Osaic in the FINRA Arbitration.

87. Osaic has not agreed or consented to arbitrate any dispute with any of the Defendants.

88. Osaic is (and Triad was) a member of FINRA, and none of the Defendants are "customers" of Triad or Osaic within the meaning of FINRA Rule 12200, which requires member

firms to arbitrate customer disputes at the request of the customer. *See Bensadoun v. Jobe-Riat*, 316 F.3d 171 (2d Cir. 2003).

89. Defendants have asserted claims for money damages against Osaic in the FINRA Arbitration and, unless enjoined, will continue to pursue such claims to obtain a judgment.

90. Osaic does not dispute that the FINRA Arbitration should proceed with respect to the claimants who were customers of Osaic.

91. Unless Defendants are enjoined, Osaic will suffer irreparable harm because it will be obliged to defend itself in the FINRA Arbitration and risk an adverse outcome in those proceedings. In this Circuit and elsewhere, being compelled to arbitrate a dispute one has not agreed to arbitrate constitutes irreparable harm as a matter of law. *Chicago School Reform Board of Trustees v. Diversified Pharm. Servs., Inc.*, 40 F. Supp. 2d 987, 996 (N.D. Ill. 1999) ("forcing a party to arbitrate a dispute that it did not agree to arbitrate constitutes *per se* irreparable harm") (citing *McLaughlin Gormley King Co. v. Terminix Int'l Co.*, 105 F.3d 1192, 1194 (8th Cir. 1997); *PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 515 (3d Cir. 1990); *Mount Ararat Cemetery v. Cemetery Workers and Greens Attendants Union, Local 365*, 975 F. Supp. 445, 447 (S.D.N.Y. 1997)).

92. Osaic has no adequate remedy at law, because any post-award challenge by Osaic to an arbitrator's award in the FINRA Arbitration would still require Osaic, in the first instance, to defend itself in an arbitration proceeding to which it did not consent.

93. Defendants will suffer no irreparable harm in the event a restraining order and/or injunction issues, as Defendants will still be able to pursue their alleged claims against Osaic in an appropriate judicial forum.

94. The balance of equities tilts decidedly in favor of Osaic which, if no restraining order and/or injunction issues, would be forced to defend itself in a forum to which it did not consent.

95. The public interest would be served by prohibiting Defendants from pursuing their claims against Osaic in a forum to which Osaic did not consent, and requiring Defendants to pursue such claims, if at all, in an appropriate judicial forum.

## PRAYER FOR RELIEF

WHEREFORE, Osaic is entitled to judgment as against Defendants:

i. Preliminarily and permanently enjoining Defendants from proceeding in any way with the FINRA Arbitration; and

ii. Declaring that Defendants' dispute with Osaic (or Triad) is not arbitrable;

iii. Awarding Osaic all attorney's fees and other costs associated with this Action; and

iv. Awarding any other and further relief that the Court deems is just and proper.

Respectfully submitted this 9th day of January, 2025.

*/s/ Alison S. Cooney*
Alison S. Cooney (Illinois Bar No. #6312577)

NELSON MULLINS RILEY & SCARBOROUGH, LLP
123 N. Wacker Drive, Suite 2100
Chicago, IL 60606
P: (312) 376-1023
F: (312) 264-9491
alison.cooney@nelsonmullins.com

Scott N. Sherman (Georgia Bar #642090) (*Pro hac vice* forthcoming)
NELSON MULLINS RILEY & SCARBOROUGH, LLP
201 17th Street NW, Suite 1700
Atlanta, Georgia 30363

scott.sherman@nelsonmullins.com

*Attorneys for Plaintiff Osaic Wealth, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 22, 2025, I electronically filed the foregoing *Osaic Wealth, Inc.'s Third Amended Complaint* with the Clerk of Court using the CM/ECF system and sent a copy of same via first-class mail, postage prepaid, to:

Adam J. Gana
Adam J. Weinstein
GANA WEINSTEIN LLP
345 Seventh Avenue
21st Floor
New York, New York 10001

Jonathan Kurta
Robert Van De Veire
Hannah Ross
KURTA LAW
295 Madison Avenue
Suite 705
New York, New York 10017

Dated this 22nd day of January, 2025.

*/s/ Alison S. Cooney*
Alison S. Cooney (Illinois Bar No. #6312577)