**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| OSAIC WEALTH, INC.,<br><br>Plaintiff,<br>v.<br><br>CHRISTOPHER AMBROSE AND JEAN AMBROSE, AS TRUSTEES OF THE JEAN AMBROSE AND CHRISTOPHER AMBROSE TRUST, GWEN GORMAN, ROBERT GORMAN, THOMAS HARROLD, CARL PEDIGO, AND JOHN STRATTON,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO. 1-24-cv-12657<br><br>**JURISDICTIONAL BRIEF** |

**BRIEF IN SUPPORT OF JURISDICTION**

Plaintiff, Osaic Wealth, Inc. ("Osaic" or "Plaintiff"), by and through the undersigned counsel, hereby files the within Brief in Support of Jurisdiction, pursuant to the Court's Order dated January 10, 2025 (ECF 11), and in support thereof states as follows:

## I. INTRODUCTION

### A. Factual Background

This case arises from a dispute wherein the above-named Defendants[1] are attempting to pursue claims in a FINRA arbitration against, Plaintiff, Osaic, which is a broker-dealer.[2] *See* Plaintiff's Second Amended Complaint ("SAC") ¶¶ 1-3. Osaic is a Delaware corporation with its principal place of business in Arizona. Thus, Osaic is a citizen of Delaware and Arizona. In the

[1] Defendants in this action are all claimants ("FINRA Claimants") in the underlying FINRA arbitration. *See* Exhibit B to SAC (FINRA Claimants' Amended Statement of Claims).
[2] The named Respondent in the FINRA arbitration is Triad Advisors, LLC. Osaic is the successor in interest to Triad Advisors, LLC.

underlying FINRA Arbitration, the Defendants/ FINRA Claimants allege claims for (1) Breach of Fiduciary Duties; (2)Suitability; (3) Fraudulent or Negligent Misrepresentations and Omissions; (4) Violation of FINRA Rules 2010, IM-2310-2 and 2020; (5) Failure to Supervise; (6) Fraudulent Inducement to Hold Investment; and (6) Breach of Contract, all of which concern the suitability of the purported investments at issue and supervision by Osaic related to the same. *See* SAC ¶ 69; *see also* Exhibit B to SAC. The claims in the underlying FINRA arbitration were pleaded jointly by all Defendants/ FINRA Claimants. *See* Exhibit B to SAC. Notably, the FINRA Claimants' claims against Plaintiff all arise out of the same case or controversy. *See* Exhibit B to SAC. Specifically, they allege that they purchased (the same and/or related) unsuitable investments at the recommendation of Osaic's registered representatives and that Osaic failed to sufficiently supervise those transactions. *See id.*

Osaic contends that the Defendants/FINRA Claimants have no legal basis to force Osaic to arbitrate these claims in the FINRA forum because there is no arbitration agreement and Defendants are not "customers" of Osaic entitled to proceed in arbitration as required by FINRA Rule 12200. *Id.* ¶¶ 2, 9. In the Defendants' FINRA Arbitration Amended Statement of Claims ("ASOC"), Defendants sought compensatory damages, well-managed account damages, statutory damages, and punitive damages. *Id*. ¶¶ 53-55. As set forth below, these damages sought by the Defendants/FINRA Claimants exceed the jurisdictional threshold of $75,000.

### B. Procedural History

Osaic filed the Complaint in the above-captioned action on December 9, 2024, seeking declaratory judgment and injunctive relief. (ECF No. 1). On December 10, 2024, Osaic submitted a copy of the complaint to the Panel in the FINRA Action. Also on December 10, 2024, this Court entered a minute entry granting Plaintiff Osaic leave to amend its Complaint to address specific items

related to subject matter jurisdiction under 28 U.S.C. § 1332 by December 20, 2024. Specifically, this Court noted that the Complaint could not allege the citizenship of Defendants "upon information and belief," and that the Complaint did not adequately plead the amount in controversy. On December 20, 2024, Osaic filed an Amended Complaint to address these issues.

On December 23, 2024, this Court entered a second minute entry granting Osaic leave to amend the Amended Complaint again to address certain items related to subject matter jurisdiction pursuant to 28 U.S.C. § 1332 by January 10, 2025. Specifically, this second minute entry focused solely on the diversity of citizenship requirement, noting that although the Complaint alleged the city and state of Defendants' residence, there may be a difference between a state in which a party resides and the party's domicile. To address this issue, Plaintiff filed a Second Amended Complaint on January 10, 2025.

On the same date, this Court entered a third minute entry, holding that the Second Amended Complaint, "addresses many of the Court's prior jurisdictional concerns." The minute entry affirmed that all jurisdictional requirements were met for Defendants Christopher Ambrose, Jean Ambrose, and John Stratton. However, the minute entry granted Osaic leave to file a Third Amended Complaint or file a jurisdictional brief addressing how the Court had subject matter jurisdiction over the remaining Defendants, Gwen Gorman, Robert Gorman, Thomas Harrold, and Carl Pedigo (ECF No. 11). Osaic notes that the Court's order asking Osaic to address supplemental jurisdiction under 28 U.S.C. § 1367 or alternatively, file a Third Amended Complaint. *Id.* This jurisdictional brief addresses both original jurisdiction under 28 U.S.C. § 1332 and supplemental jurisdiction under 28 U.S.C. § 1367 and further requests, in the alternative, that the Court permit limited jurisdictional discovery. As set forth below, the Court has original diversity jurisdiction over the claims against

these Defendants and may also exercise supplemental jurisdiction over the claims against these Defendants.

## II. ARGUMENT

### A. Defendants Meet The Amount In Controversy Requirement of 28 U.S.C. § 1332.

The well-established standard for subject matter jurisdiction is that district courts have original jurisdiction over all civil matters where the amount in controversy exceeds the sum or value of $75,000 and there is complete diversity of citizenship between the plaintiffs and defendants. 28 U.S.C. § 1332(a)(1).[3] The court has jurisdiction unless they find that it is legally certain that the recovery or cost of complying with the judgment will be less than $75,000. *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 540–41 (7th Cir. 2006). The court's inquiry should not be whether a recovery of more than $75,000 is likely, but whether it is possible under the applicable state law where the plaintiff acts in good faith regarding its claim that the claim is in excess of $75,000. *Sykes v. Cook Inc.*, 72 F.4th 195, 207 (7th Cir. 2023). A plaintiff need only demonstrate a "good faith, minimally reasonable belief that its claim will result in a judgment in excess of $75,000." *Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 881 (7th Cir. 2001)(citations omitted). Plaintiffs typically enjoy a presumption of correctness unless it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount[.]" *Barbers, Hairstyling For Men & Women, Inc. v. Bishop*, 132 F.3d 1203, 1205 (7th Cir. 1997); *see also Del Vecchio v. Conseco, Inc.*, 230 F.3d 974, 978 (7th Cir. 2000)(citations omitted)(Federal courts determining the amount in controversy "[g]enerally…give plaintiffs the benefit of the doubt in these matters….").

[3] As Plaintiff is a citizen of Delaware and Arizona, and Defendants are citizens of either Illinois or Texas, there is complete diversity of citizenship, and this jurisdictional element will not be addressed herein.

"In suits seeking the equitable remedies of an injunction or a declaratory judgment, the amount in controversy is determined by the value to the plaintiff (or petitioner) of the object litigation." *Am.'s MoneyLine, Inc. v. Coleman*, 360 F.3d 782, 786 (7th Cir. 2004). In the context of compelling or enjoining arbitration, whether or not the $75,000 amount in controversy requirement is measured by the damages sought in the underlying arbitration. *See Am.'s MoneyLine*, 360 F.3d at 786 ("In the context of actions to compel arbitration, we have adhered to the rule that, in order to ascertain whether the jurisdictional amount for the diversity statute has been met, the appropriate focus is the stakes of the underlying arbitration dispute."). Thus, the relevant inquiry before this Court is whether the stakes of the Defendants' arbitration claims exceed $75,000. Here, Plaintiff has met the low bar threshold stating a claim that meets the jurisdictional threshold.

***1. The punitive damages and 'well-managed account' damages sought by Defendants in the underlying arbitration meet the amount in controversy requirement.***

Defendants seek to recover punitive damages and 'well-managed' account damages against Osaic in the underlying FINRA Arbitration and these damages, in addition to the compensatory and other damages sought by Plaintiffs, exceed the jurisdictional threshold. Punitive damages that could be awarded in an arbitration can be included in the amount in controversy, but jurisdiction cannot rely on an excessive and untenable award of punitive damages. *Am. Bankers Life Assur. Co. of Fla. v. Evans*, 319 F.3d 907, 909 (7th Cir. 2003)(dismissing a case where plaintiff claimed punitive damages 635x as much as their compensatory damages were possible in arbitration). Courts consider case law related to excessive awards of punitive damages when determining if it appropriate to include punitive damages in the amount in controversy. *Id.*; *see also Del Vechio v. Conseco, Inc.*, 230 F.3d 974 (7th Cir. 2000)(held: no diversity jurisdiction where 125x the compensatory damages was needed to satisfy the amount in controversy requirement). A FINRA

panel can award punitive damages so long as the award of damages does not violate any state or federal rule capping punitive damages and in the Northern District of Illinois. *In re Collazo*, 613 B.R. 650, 666 (N.D. Ill. 2020)("[P]unitive damages do not offend due process until they exceed a single-digit ratio between punitive and compensatory damages[.]")(cleaned up). "[D]ouble, treble, or quadruple damages to deter and punish" have long been established in the law. *State Farm Mutual Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003). Courts have routinely held that using between 2 and 4 times the compensatory damages in punitive damages to reach the amount in controversy requirement is permissible. *See, e.g.*, *LMS Ins. Corp. v. Spaulding Ent. Inc.*, 533 F.3d 542, 552 (7th Cir. 2008)(applying a multiplier of 2.75 time compensatory damages in punitive damages to reach the amount in controversy requirement was reasonable because the "ratio is not only a single digit ratio, but also falls below the 4-to-1 threshold referenced by the Supreme Court."); *W.C. Motor Co. v. Talley*, 63 F. Supp. 3d 843, 850 (N.D. Ill. 2014)(noting that a ratio of 10-to-1 punitive to compensatory damages is "the outer limit of what due process allows"); *cf. Am. Bankers*, 319 F.3d at 909 (relying on 635 times compensatory damages to the meet amount in controversy requirement was excessive and unreasonable); *Del Vechio*, 230 F.3d at 974 (relying on 125x compensatory damages to meet the amount in controversy requirement was excessive and unreasonable).

In addition to punitive damages, each of the Defendants seeks recovery of 'well-managed portfolio' damages in the underlying arbitration. These damages are a measure of compensatory damages and the FINRA Arbitrator's Guide authorizes arbitrators to award these type of damages. [4]It defines these damages as:

Well-Managed Portfolio Account

This measure of damage allows the claimant to recover the difference between

[4] FINRA Arbitrator's Guide, available online at, https://www.finra.org/sites/default/files/arbitrators-ref-guide.pdf.

> what the claimant's account made or lost versus what a well-managed account, given the investor's objectives, would have made during the same time period.

FINRA Arb. Guide at 67.[5] Applied here, each of the Defendants seeks to recover, as compensatory damages, not only the recovery of their initial investment amount, but also the hypothetical gain on their investment amount had it been invested in a 'well-managed' portfolio over the same time period—which, in this case, dates back to at least 2019 when Osaic's registered representative who allegedly recommended these investments ended his association. (Second Amended Compl. at ¶ 7) ("Mr. Walesa was also once an independent contractor of Osaic, but left in 2019.").

Here, Plaintiffs have met the amount in controversy requirement for each Defendant. Defendant Thomas Harrold seeks recovery of $25,000, plus an additional unidentified investment sum, including compensatory damages, well-managed account damages, statutory damages, and punitive damages. ASOC at ¶ 54. Even without considering the "additional investment sum," the claim for injunctive relief against Defendant Harrold meets the amount in controversy requirement when a 3.01x punitive damages multiple is applied to $25,000—well within the limit of what may be recoverable in FINRA, which has no cap on punitive damages. *See W.C. Motor Co*, 63 F. Supp. 3d at 850 (noting that a ratio of 10-to-1 punitive to compensatory damages is "the outer limit of what due process allows"). Moreover, Defendant Harrold seeks recovery of 'well-managed' portfolio damages which increases the compensatory damages sought well beyond the investment sum of $25,000, by adding a hypothetical gain to this portfolio over at least five years.

Defendant Carl Pedigo seeks recovery of compensatory damages of his $50,000 investment, plus well-managed account damages, statuary damages, and punitive damages. ASOC at ¶ 55. The claim for injunctive relief against Defendant Pedigo meets the amount in controversy

---

[5] Available online at, https://www.finra.org/sites/default/files/arbitrators-ref-guide.pdf

requirement when a 1.51x punitive damages multiple is applied—well within the limit of what may be recoverable in FINRA, which has no cap on punitive damages—and even lower than the Seventh Circuit has previously affirmed was reasonable to meet the requirement. *See LMS Ins. Corp.*, 533 F.3d at 552 (applying a multiplier of 2.75-times compensatory damages in punitive damages to reach the amount in controversy requirement was reasonable because the "ratio is not only a single digit ratio, but also falls below the 4-to-1 threshold referenced by the Supreme Court."). Moreover, Defendant Pedigo seeks recovery of 'well-managed' portfolio damages which increases the compensatory damages sought well beyond the investment sum of $50,000, by adding a hypothetical gain to this portfolio over at least five years.

With respect to Defendants Harrold and Pedigo, relying on merely 1.51-3.1x compensatory damages to meet the amount in controversy requirement is reasonable, especially given that it does not exceed a single-digit multiple or the multiple of four referenced by the Supreme Court. *State Farm*, 538 U.S. at 425; *In re Collazo*, 613 B.R. at 666.

Defendants Gwen Gorman and Robert Gorman seek recovery of an unidentified investment sum and recovery of compensatory damages, well-managed account damages, statutory damages, and punitive damages. ASOC at ¶ 53. As to Defendants Gwen Gorman and Robert Gorman, Plaintiff has a good-faith basis for believing that damages plausibly at stake with respect to the Gormans will exceed $75,000 based upon the allegations in the ASOC. Each Defendant/FINRA Claimant seeks recovery of a minimum of $25,000 and others exceed hundreds of thousands of dollars. There is no reason to believe that the Gorman's claim for damages would be less than that of other Defendants/FINRA Claim, all of which meet the $75,000 amount in controversy requirement.[6] Osaic has asked counsel for Defendants Gorman to state whether they seek to

[6] Plaintiff is hampered in proving subject matter jurisdiction by Defendants' vague allegations of damages in the underlying arbitration.

recover more than $75,000 in the underlying FINRA Arbitration but has not received a response. At a minimum, jurisdictional discovery as to the Gormans should be permitted (argued in more detail below).

### B. This Court Has Supplemental Jurisdiction Over Any Defendants Not Deemed to Have Met The Amount In Controversy Requirement.

This Court has supplemental jurisdiction over any claims deemed not to have meet the amount in controversy requirement because the claims arise out of the same case or controversy and no exception to exercising supplemental jurisdiction applies.

*First*, this Court has supplemental jurisdiction over any claims over which it does not have original jurisdiction. Even if the court does not have original jurisdiction over a Defendant in this action under 28 U.S.C. § 1332, it can exercise supplemental jurisdiction under 28 U.S.C. § 1367. "[I]n any civil action of which the district court have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction such that they form part of the same case or controversy[.]" 28 U.S.C. § 1367(a). "Section 1367(a) is a broad grant of supplemental jurisdiction" when "a well-pleaded complaint has at least one claim satisfying the amount in controversy requirement[.]" Exxon *Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 547 (2005); *In re StarLink Corn Prods Liability Litigation*, 211 F. Supp. 2d 1060, 1065 (N.D. IL. 2002). Claims arise out of the same "case or controversy" if they derive from a "common nucleus of operative facts." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). A plaintiff must plead only a "loose factual connection" between the claims that have original jurisdiction and those that do not. *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 683 (7th Cir. 2014); *Royal Towing, Inc. v. City of Harvey*, 350 F. Supp.2d 750, 753 (N.D. IL. 2004).

Here, this Court has original jurisdiction over the claims against at least three Defendants—Christopher Ambrose, Jean Ambrose, and John Stratton—as acknowledged in the Court's minute entry on January 10, 2025. (ECF 11.) And as set forth in the preceding Argument Section A, this Court also clearly has original jurisdiction over the claims against Defendants Harrold and Pedigo based on a punitive damages multiplier of 1.51-3.1 times the minimum compensatory damages they seek and based on Defendant's claims for 'well-managed' portfolio damages, increasing the minimum compensatory damages they seek by adding hypothetical gains over a period of at least five years.

Moreover, the claims against Defendants Gwen Gorman, Robert Gorman, Thomas Harrold, and Carl Pedigo arise out of the same case or controversy as those claims against Defendants Christopher Ambrose, Jean Ambrose, and John Stratton because a common nucleus of fact exists between the claims against all Defendants. This case seeks to enjoin the same action by all Defendants—prohibiting Defendants from seeking arbitration against Osaic because they do not have arbitration agreements and do not meet the threshold requirement under FINRA Rule 12200, which requires Defendants/FINRA Claimants to be "customers" of Osaic. SAC ¶¶ 1-3, 9. Defendants'/FINRA Claimants' underlying claims in the FINRA all arise out of the same allegations that they purchased unsuitable investments at the recommendations of Osaic's registered representatives and that Osaic failed to properly supervise those transactions. *See generally* Exhibit B to SAC. Moreover, each Defendant/ FINRA Claimant alleges the same claims and seeks the same damages. *See generally* Exhibit B to SAC. Both the claims in this action and the underlying FINRA arbitration arise out of the same common nucleus of operative facts; accordingly, Plaintiffs have more than met their burden of pleading a factual connection needed to

demonstrate that the claims "arise out of the same case or controversy." *McCoy*, 760 F.3d at 683; *Royal Towing*, 350 F. Supp. 2d at 753.

*Second*, the claims do not fall into any exceptions that divests this Court of supplemental jurisdiction. 28 U.S.C. § 1367(b) only serves to divest a district court of supplemental jurisdiction "over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure[.]" 28 U.S.C. § 1367(b). Rule 14 allows either a plaintiff or a defendant to serve a summons and complaint a "nonparty who is or may be liable to it for all or part of the claim against it." *See* Fed. R. Civ. P 14 (a) and (b). Rule 19 governs joinder of required parties and Rule 20 governs the permissive joinder of parties. *See* Fed. R. Civ. P. 19 and 20. Rule 24 governs intervention as of right. *See* Fed. R. Civ. P 24. While Rule 20 does govern when a party permissively joins defendants in one action, the intent of § 1367 in prohibiting supplemental jurisdiction over defendants joined under the Rule is to prevent "plaintiffs without an independent ticket of entry to federal court [from] piggybacking onto other claims which do satisfy the jurisdictional requirements." *N. Am. Mech. Servs. Corp. v. Hubert*, 859 F. Supp. 1186, 1189 (C.D. Ill. 1994) (cleaned up).

Here, Plaintiffs are not "piggybacking" independent claims against individual defendants. The Defendants/FINRA Claimants are, essentially co-plaintiffs, in the FINRA arbitration. They filed one action against Osaic, alleging the same claims against Osaic. Filing the FINRA arbitration against Plaintiff was a single concerted activity all Defendants took concurrently. Moreover, Plaintiff does not seek eight separate injunctions against eight defendants for filing eight separate FINRA claims. Plaintiffs seek one injunction that enjoins all Defendants from the same activity. This is vastly different from the circumstances in *N. Am. Mech.* wherein the Court declined to exercise supplemental jurisdiction over a separate claim, alleged solely against one

defendant, that did not meet the amount in controversy requirement. *See id.* at 1188 (dismissing claim because a single defendant could not be found liable for more than $50,000).

Further, none of the exceptions under which district courts may *sua sponte* decline to exercise supplemental jurisdiction over a claim exists in the instant case. *See* 28 U.S.C. § 1367(c).

**C. At A Minimum, Jurisdictional Discovery Is Warranted.**

Because meeting the amount in controversy requirement of 28 U.S.C. § 1332 depends on the stakes of the underlying arbitration, Osaic is hampered in establishing the Court's subject matter jurisdiction due to Defendants' vague pleadings in the underlying FINRA arbitration. Specifically, Osaic is hampered by Defendants Gwen Gorman and Robert Gorman vaguely seeking recovery of an "unidentified investment sum" plus compensatory damages, well-managed account damages, statutory damages, and punitive damages in the FINRA arbitration. SAC ¶ 53. Osaic has asked counsel for Defendants Gorman to state whether they seek to recover more than $75,000 in the underlying FINRA Arbitration but has not received a response. Generally, parties are entitled to discovery on jurisdiction or venue. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978). Where subject-matter jurisdiction is inconclusive, limited jurisdictional discovery is available. *Qin v. Deslonchamps*, 31 F.4th 576, 582 (7th Cir. 2022)("Courts sometimes authorize [jurisdictional] discovery after suit is filed when doubt emerges regarding whether, as alleged, the parties are in fact diverse."). Furthermore, courts have held that where a more satisfactory showing of the facts is necessary to support Plaintiff's allegation that the amount in controversy will exceed the statutory requirement, jurisdictional discovery is appropriate. *Brophy v. Almanzar*, 359 F. Supp. 3d 917, 926 (C.D. Cal. 2018)("[T]here is nothing in the record from which the Court can determine whether the amount in controversy requirement has been met . . . As a result, the Court sua sponte orders the parties to conduct jurisdictional discovery to clarify

whether the amount-in-controversy requirement has been met."). Accordingly, for any Defendant which this Court is unsure whether the amount in controversy has been met (i.e., that Defendants in the underlying arbitration are alleging that they are owed more than $75,000 in damages), Osaic should be able to conduct limited jurisdictional discovery as to those Defendants. This is particularly appropriate here where the amount in controversy is controlled by Defendants' own allegations in the underlying FINRA Arbitration and thus, the information is presumptively within their possession.

## III. CONCLUSION

For the foregoing reasons, Osaic has demonstrated that this Court has subject matter jurisdiction over the claims in this action as to each Defendant under either 28 U.S.C. § 1332 or 28. U.S.C. § 1367.

Respectfully submitted this 22nd day of January, 2025.

*_/s/ Alison S. Cooney_*
Alison S. Cooney (Illinois Bar No. #6312577)

NELSON MULLINS RILEY & SCARBOROUGH, LLP
123 N. Wacker Drive, Suite 2100
Chicago, IL 60606
P: (312) 376-1023
F: (312) 264-9491
alison.cooney@nelsonmullins.com

Scott N. Sherman (Georgia Bar #642090) (*Pro hac vice* forthcoming)
NELSON MULLINS RILEY & SCARBOROUGH, LLP
201 17th Street NW, Suite 1700
Atlanta, Georgia 30363
scott.sherman@nelsonmullins.com

*Attorneys for Plaintiff Osaic Wealth, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 22, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.

Dated this 22nd day of January, 2025.

*/s/ Alison S. Cooney*
Alison S. Cooney (Illinois Bar No. #6312577)