**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| OSAIC WEALTH, INC.,<br><br>Plaintiff,<br>v.<br><br>CHRISTOPHER AMBROSE AND JEAN AMBROSE, AS TRUSTEES OF THE JEAN AMBROSE AND CHRISTOPHER AMBROSE TRUST, GWEN GORMAN, ROBERT GORMAN, THOMAS HARROLD, CARL PEDIGO, AND JOHN STRATTON,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO. 1:24-cv-12657<br><br>***Preliminary Injunction Hearing Requested*** |

**PLAINTIFF OSAIC WEALTH, INC.'S**
**MOTION FOR PRELIMINARY INJUCTION**

Plaintiff Osaic Wealth, Inc. ("Osaic") moves this Court for a Preliminary Injunction Order pursuant to Fed. R. Civ. P. 65. Osaic incorporates by reference the background and factual allegations contained in its Third Amended Complaint. (ECF No. 12.)[1] Defendants set forth in the caption above initiated an arbitration against Triad Advisors, LLC ("Triad" or "Osaic")[2] before the Financial Industry Regulatory Authority (the FINRA Arbitration") on or about July 29, 2024. Defendants do not have the right to compel arbitration, and this Motion should be granted.

---

[1] The Third Amended Complaint is cited herein as "Compl."

[2] The arbitration is pursued by Defendants against Triad Advisors LLC, a formerly registered broker-dealer now known as Osaic. The terms Triad or Osaic may be used interchangeably here.

**TABLE OF CONTENTS**


INTRODUCTION ........ 1

FACTS ........ 2

LAW AND ARGUMENT ........ 3

I. PLAINTIFF IS ENTITLED TO A PRELIMINARY INJUNCTION ........ 3

A. Osaic Has Shown a Likelihood of Success on the Merits ........ 3

1. No Written Agreement Exists Between Defendants and Osaic Providing for FINR Arbitration ........ 4

2. Defendants were never "customers" of Osaic within the meaning of FINRA Rule 12200 and thus, Osaic is not Required to Arbitrate their Claims in FINRA........ 7

B. Osaic Will Suffer Irreparable Harm Absent an Injunction and Legal Remedies Would be Insufficient ........ 11

C. The Balance of Hardships Favors Granting a Preliminary Injunction........ 12

D. Public Policy Favors Issuing a Preliminary Injunction ........ 13

E. Bond is Not Necessary Because No Foreseeable Economic Harm Exists as to Defendants ........ 14

CONCLUSION........ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AT&T Techs., Inc. v. Comm. Workers of Am.*,
475 U.S. 643 (1986)....................13

*Berthel Fisher & Co. Fin. Servs. v. Larmon*,
695 F.3d 749 (8th Cir. 2012)....................8, 13

*Centaurus Fin., Inc. v. Ausloos*,
No. 19-CV-243, 2019 WL 2027271 (E.D. Wis. May 8, 2019)....................9, 11, 14

*Chicago School Reform Board of Trs. v. Diversified Pharm. Servs., Inc.*,
40 F. Supp. 2d 987 (N.D. Ill. 1999)....................11

*Citigroup Glob. Markets Inc. v. Abbar*,
761 F.3d 268 (2d Cir. 2014)....................8, 11

*CitiGroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Limited (“VCG II”)*,
598 F.3d 30 (2d Cir. 2010)....................3

*Davis v. Mineta*,
302 F.3d 1104 (10th Cir. 2002)....................12

*Digitech Computer, Inc. v. Trans-Care, Inc.*,
583 F. Supp. 2d 984 (S.D. Ind. 2008)....................7

*Duthie v. Matria Healthcare, Inc.*,
535 F. Supp. 2d 909 (N.D. Ill. 2008)....................12

*Edward E. Gillen Co. v. Ins. Co. of the State of Pennsylvania*,
747 F. Supp. 2d 1058 (E.D. Wis. 2010)....................14

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995)....................3

*GFRB, LLC v. Worthy Promotional Products, LLC*,
624 F. Supp. 3d 959 (N.D. Ill. 2022)....................7

*Goldman, Sachs & Co. v. City of Reno*,
747 F.3d 733 (9th Cir. 2014)....................8

*Interactive Brokers, LLC v. Duran*,
No. 08-CV-6813, 2009 WL 393827 (N.D. Ill. Feb. 17, 2009)....................11

*McLaughlin Gormley King Co. v. Terminix Int'l Co.*,
105 F.3d 1192 (8th Cir. 1997) ....................................................................................11

*Morgan Keegan & Co., Inc. v. Louise Silverman Trust*,
No. JFM-11-2533, 2012 WL 113400 (D. Md. Jan. 12, 2012), *aff'd sub nom. Morgan Keegan & Co., Inc. v. Silverman*, 706 F.3d 562 (4th Cir. 2013) ..............................13

*Morgan Keegan & Co. v. Silverman*,
706 F.3d 562 (4th Cir. 2013) ......................................................................................8

*Morgan Stanley & Co., Inc. v. Seghers*,
No. 10-5378, 2010 WL 3952851 (S.D.N.Y. Oct. 08, 2010)....................................................3

*Plummer v. Am. Inst. of Certified Public Accountants*,
97 F.3d 220 (7th Cir. 1996) ........................................................................................3

*Prudential Securities v. Emerson*,
905 F.Supp. 1038 (M.D. Fla. 1995)...........................................................................5, 6

*Raymond James Fin. Servs., Inc. v. Cary*
709 F.3d 382 (4th Cir. 2013) ...................................................................................9, 10

*Roland Machine Co. v. Dresser Indus., Inc.*,
749 F.2d 380 (7th Cir. 1984) .......................................................................................4

*Smith v. Bartolini*,
No. 01 C 4311, 2003 WL 21148940 (N.D. Ill. May 14, 2003) ................................4, 5, 10, 11

*Traderight Sec., Inc. v. Kirschman*,
No. 10 C 2042, 2011 WL 614090 (N.D. Ill. Feb. 15, 2011)...............................................5, 6

*Triad Advisors, LLC v. Richard Kim et. al.*,
Case No. 24-cv-03092 ...................................................................................................2

**Rules**

Fed. R. Civ. P. 65(c) ....................................................................................................13

**Statutes**

28 U.S.C. § 2201............................................................................................................4

**Other Authorities**

FINRA Rule 12200 ...................................................................................................4, 7, 8

## INTRODUCTION

Osaic never had an agreement to arbitrate with Defendants or a customer relationship with them and cannot be compelled to arbitrate against them. In the underlying FINRA Arbitration, approximately twenty claimants have collectively sued Osaic regarding investments allegedly recommended by James Walesa ("Mr. Walesa") and Stephen Denari ("Mr. Denari").[3] (*See* **Ex. A** (Statement of Claim).)[4] They generally allege these investments were unsuitable for them. Walesa is a former independent contractor of Osaic who left in 2019. (Compl. ¶ 7.) Denari is a current independent contractor of Osaic. (*Id.* at ¶ 8.)

In the FINRA Arbitration, the claimants collectively try to create a customer relationship by making unsupported and insufficient, vague allegations such as: "Claimants . . . frequently received and executed official Triad paperwork in connection with their investments in the Companies as being 'offered through Triad Advisors, Inc.'" (*See* **Ex. B** (Motion to Amend Statement of Claim) at 18.) In reality, none of these Defendants had a customer relationship with Osaic, had no written agreement with Osaic, never opened an account, and Osaic made no money on them. (*See* **Ex. G** (Declaration of Gregory M. Curley).) Under the FINRA Rules, Osaic can be compelled to arbitrate in FIRNA only if there is a written agreement between the parties or a customer of Osaic files an action in FINRA against Osaic. Osaic does not agree to arbitrate claims with non-customers in FINRA. Defendants have not presented any evidence of an alleged customer relationship with Osaic. Osaic undertook an investigation of its own records and found no evidence of a customer relationship with Defendants. (*See id.* at ¶¶ 9 and 10.) The FINRA

---

[3] Although some Claimants in the FINRA Arbitration allege their broker was Kenneth Luccioni ("Luccioni"), none of the Defendants make that allegation.
[4] Claimants in the FINRA Arbitration have filed two Motions to Amend (both granted) solely to add additional Claimants. In relevant part, the Second Motion to Amend dated October 22, 2024 added John Stratton, a Defendant in this Action. (**Ex. B**.)

Arbitration does include some customers of Osaic (not Defendants in that action). That case is set for final hearing in December 2025. Osaic moves to promptly stop the FINRA Arbitration solely as to the Defendant non-Osaic customers.

**FACTS**

As set forth above, Osaic incorporates by reference the background and factual allegations contained in the Third Amended Complaint. (ECF No. 12.) Specifically, in the Complaint, Osaic set for the following key points: (1) That Osaic has contested the arbitrability of Defendant's Claims since the inception of the FINRA Arbitration (*id.* at ¶¶ 10-20); and (2) that the FINRA Panel ordered Osaic to sign a FINRA submission agreement, the forced signing of which Osaic contends does not waive their rights to contest arbitrability here (*id.* at ¶¶ 21-23).[5]

[5] As discussed herein, at the start of this action Osaic has contested the arbitrability of claims filed by non-customers of Osaic. Furthermore, Osaic contends and case law supports its position that signing the signing a FINRA Submission Agreement (a required document that a broker-dealer is to sign and submit at the time of Answering a Statement of Claim) does not bind a broker-dealer to arbitrating against non-customers. In a separate matter in this Court, *Triad Advisors, LLC v. Richard Kim et. al.*, Case No. 24-cv-03092, Osaic signed a submission involving a FINRA Arbitration with Claimants that were both Osaic customers and had the right to arbitrate and non-customers of Osaic that did not have the right to arbitrate. At the time of signing the Submission Agreement, Osaic expressed in its Special Appearance Answer that it reserved the right to contest arbitrability in Court as to non-customers of Osaic. In that case, the District Court issued an Order denying Osaic's Motion for Preliminary Injunction in part on grounds that Osaic did not object strenuously enough to arbitration of non-customers when it signed the Submission Agreement. *Triad Advisors, LLC v. Richard Kim et. al.*, Order on Preliminary Injunction (ECF No. 28 at 4) ("Triad's objections to the arbitrability of Defendants' claims at issue here are distinguishable for not being as strenuous or repeated as those in *[Prudential Sec., Inc. v.] Emerson*."). That issue is up on appeal before the Seventh Circuit where Osaic contends that it acted appropriately under the law by clearly reserving rights to seek an injunction in Court, appropriately object to arbitrability and signing the Submission Agreement does not waive Osaic's rights to contest jurisdiction. In an effort to avoid that same argument here by Defendants (who have the same lawyers as the Defendants in in both cases), Osaic did not sign the FINRA submission agreement at the time it filed its Special Appearance Answer and reserved rights to seek an injunction in court as to non-customers. As discussed herein, the Panel nevertheless issued an Order requiring Osaic to sign the Submission Agreement or face sanctions. As discussed herein, the forced signing of the Submission Agreement also does not waive Osaic's rights to contest arbitrability here.

Osaic has proceed with this legal action to enjoin the FINR Arbitration as to non-customers of Osaic. Osaic notes that it took a number of weeks to work through subject matter jurisdictional questions of the Court requiring a Third Amended Complaint. Osaic filed the Third Amended Complaint on January 22, 2025. Now that the Court is satisfied as to subject matter jurisdiction, Osaic has proceeded with the filing of this Motion.

## LAW AND ARGUMENT

Whether a dispute between parties may be submitted to arbitration is resolved by the courts unless the parties have explicitly agreed otherwise (which is not the case here). *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). This Court has the power to enjoin a FINRA claimant from proceeding with an arbitration claim where the claims at issue are not arbitrable. *CitiGroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Limited ("VCG II")*, 598 F.3d 30, 40 (2d Cir. 2010); *Morgan Stanley & Co., Inc. v. Seghers*, No. 10-5378, 2010 WL 3952851, at *4 (S.D.N.Y. Oct. 08, 2010) ("A district court has the authority to issue a preliminary injunction to enjoin an individual from pursuing a FINRA arbitration.").

In deciding whether to grant preliminary injunctive relief, a court must consider four factors: "(1) whether the plaintiff has a reasonable likelihood of success on the merits; (2) whether the plaintiff will have an adequate remedy at law or will be irreparably harmed if the injunction does not issue; (3) whether the threatened harm to the plaintiff outweighs the threatened harm the injunction may inflict upon the defendant; and (4) whether the granting of an injunction would harm the public interest." *Plummer v. Am. Inst. of Certified Public Accountants*, 97 F.3d 220, 229 (7th Cir. 1996). Here, all four factors weigh in favor of granting Plaintiff's requested relief.

### I. PLAINTIFF IS ENTITLED TO A PRELIMINARY INJUNCTION

#### A. Osaic Has Shown a Likelihood of Success on the Merits.

Osaic has sought a declaratory judgment and need only show that it has 'some likelihood' of success on the merits to obtain injunctive relief. While the threshold to find a likelihood of success is low, Osaic can show a strong likelihood of success on its claims regarding the non-arbitrability of Defendants' claims under 28 U.S.C. § 2201. *See Roland Machine Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387 (7th Cir. 1984) ("[W]e agree that the threshold [to find success on the merits] is low."). FINRA Rule 12200 governs arbitrability. It states that members must arbitrate if: (1) Required by written agreement; or (2) Requested by the customer; and the dispute is between a customer and a member or associated person of a member; and the dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company. FINRA Rule 12200 (emphasis added).

### 1. No Written Agreement Exists Between Defendants and Osaic Providing for FINR Arbitration.

Osaic did not agree to arbitrate Defendants' claims by written agreement. Because no such agreement exists, Osaic expects Defendants to argue that the FINRA Submission Agreement is a new agreement to arbitrate and that Osaic should have obtained injunctive relief prior to signing the FINRA Submission Agreement. But as set forth below, there is no law in this jurisdiction supporting Defendant's perceived argument and the law cited herein supports Osaic's position that it did not waive the right to contest arbitrability.

A signed FINRA uniform submission agreement does not mandate arbitrability if a party simultaneously objects to jurisdiction. In *Smith v. Bartolini*, this Court held that an individual broker who executed a uniform submission agreement "without reserving any rights to contest jurisdiction," could not move to vacate an arbitration award rendered against him after the arbitration concluded. No. 01 C 4311, 2003 WL 21148940, at *8 (N.D. Ill. May 14, 2003)

(emphasis added). Here, Osaic did reserve its rights and much more contesting arbitrability at the time it signed the Submission Agreement after being ordered to do so by the FINRA Panel. Highlighting this critical distinction, this Court discussed the issue at length in *Traderight Sec., Inc. v. Kirschman*, recognizing that a uniform submission agreement would not be dispositive of arbitrability if a FINRA member contested FINRA's jurisdiction in its initial pleading in the arbitration—just like Osaic did here. No. 10 C 2042, 2011 WL 614090, at *3 (N.D. Ill. Feb. 15, 2011). In that case, a FINRA member attempted to avoid the uniform submission agreement in reliance on *Prudential Securities v. Emerson*, 905 F.Supp. 1038 (M.D. Fla. 1995), but was unsuccessful because it failed to raise a timely objection. Specifically, in *Traderight Sec., Inc.*, the broker-dealer did not object to FINRA arbitrability in its answer to the statement of claim, then waited several months and filed motions to dismiss in FINRA as to the merits. *See Traderight Sec., Inc.*, 2011 WL 614090, at *4 ("To the contrary, the motions argued the merits of the case, namely, that Traderight had breached no duty to the former clients of Enterprise, and thus the arbitrators should dismiss the arbitration.").

The Court in *Prudential* contrasted the facts of *Traderight Sec., Inc.* with those of *Prudential Securities v. Emerson*. In *Prudential Securities*, an individual brought two claims against *Prudential*: one related to a brokerage account and one related to an insurance product. 905 F.Supp. at 1039. *Prudential* executed a uniform submission agreement. *Id.* at 1040–41. When *Prudential* submitted its written answer to the claims, it objected to the arbitrability of the insurance claims but executed the submission agreement because it did not object to the arbitrability of the securities-related claims. *Id.* This Court in *Traderight Sec., Inc.* acknowledged the *Prudential* court's decision finding that Prudential did not agree to arbitrate based on its continuous objections but denied that relief to the plaintiff in *Traderight Sec., Inc.* because it raised

no objection when signing the submission agreement, filing its answer, and then filing substantive motions to dismiss before contesting arbitrability. *See Traderight Sec., Inc.*, 2011 WL 614090, at *4 ("All this is in contrast to the evidence in *Prudential* that Prudential never agreed to arbitrate the dispute.").

Based on this Court's analysis in *Traderight Sec., Inc.*, Osaic did not agree to arbitrate the claims because it timely objected to FINRA jurisdiction in its first responsive pleading. (*See* **Ex. C** (Osaic's Special Appearance Answer and Defenses) at 1-2.) Consistent with Osaic's objection to FINRA jurisdiction, Osaic refused to sign the FINRA Submission Agreement and then filed this action for declaratory and injunctive relief on December 9, 2024. (ECF No. 1.)

In addition to the points addressed above, this Court in *Traderight Sec., Inc.* also held that filing a "declaratory judgment action" before signing a submission agreement (while not a required standard) is an appropriate measure to preserve non-waiver of objections to arbitrability. *Traderight Sec., Inc.*, 2011 WL 614090, at *4. After Osaic initiated this civil action, Osaic sent a modified Submission Agreement to FINRA reconfirming it only agreed to arbitrate against its own customers, not Defendants. (*See* **Ex. D** (Osaic's Modified FINRA Submission Agreement).) However, FINRA sent a 'deficiency notice' rejecting the Submission Agreement which contained Osaic's agreement to arbitrate only some of the claims. (*See* **Ex. E** (FINRA Deficiency Notice).) Just days later the FINRA Panel ordered Osaic to sign the Submission Agreement or face sanctions in seven days and expressly documented in the order that: "Respondent has made strenuous objections against filing a submission agreement in the form that FINRA requires and the submission agreement to be filed is only being signed based upon the panel's order to do so to avoid sanctions." (*See* **Ex. F** (FINRA Order Compelling Unmodified Submission Agreement).)

Osaic complied with the FINRA Panel's Order while at the same time pursuing its previously filed action here. Notably, the FINRA Submission Agreement does not contain an integration or merger clause, and the Court may examine outside evidence to determine if the parties intended it to be a complete and exclusive writing of the parties' agreement. *See GFRB, LLC v. Worthy Promotional Products, LLC*, 624 F. Supp. 3d 959 (N.D. Ill. 2022) (When a contract lacks an integration clause, the court must examine all relevant evidence to determine if the parties intended the writing to be a complete and exclusive statement of the agreement's terms). Where there is no such clause, the Court may consider extrinsic evidence. *See Digitech Computer, Inc. v. Trans-Care, Inc.*, 583 F. Supp. 2d 984 (S.D. Ind. 2008) (If the contract is not fully integrated, the parol evidence rule permits the consideration of extrinsic evidence to supply omissions or to explain the terms of the contract). Osaic properly preserved its rights to contest arbitration.

Osaic promptly filed this motion for preliminary injunction after addressing the Court's concerns with respect to subject matter jurisdiction. On January 23, 2025, the Court accepted the Third Amended Complaint. (ECF No. 14.) Osaic is now promptly moving for injunctive relief.

**2. Defendants were Never "Customers" of Osaic within the Meaning of FINRA Rule 12200 and thus, Osaic is Not Required to Arbitrate their Claims in FINRA.**

Whether Defendants can force Osaic to arbitration in FINRA turns on whether Defendants are "customers" of Osaic under the meaning of FINRA Rule 12200 and whether their claims arise in connection with Osaic's business activities. Defendants have not presented any evidence of a customer relationship with Osaic. Osaic's review of records shows that there are no such records. (**Ex. G** ¶¶ 9-10.) Osaic anticipates Defendants will argue that even if they were not Osaic customers, they are entitled to arbitrate claims against Osaic as "customers" of Osaic's associated persons. But that argument fails factually and legally.

As a preliminary matter, there is no evidence that Defendants were ever customers of Osaic's associated persons Walesa or Denari. Although they allege in the FINRA Arbitration that they purchased unsuitable investments at the recommendation of Walesa or Denari while both individuals were associated with Osaic (*see* **Ex. B** at 11-14), they have produced no evidence of such activity. Osaic cannot be compelled to arbitrate claims brought by non-customers solely because they allege they were customers of Walesa and/or Denari with both men were associated Osaic without providing any evidence (even months after initiating their arbitration claim).

But even if Defendants were customers of Walesa or Denari while associated persons of Osaic, Osaic disputes that it is required to arbitrate with Defendants. The Seventh Circuit has not yet considered interpreted the meaning of "customer" in this context, but other circuits have.

In *Citigroup Glob. Markets Inc. v. Abbar*, the Second Circuit found that a "customer" under FINRA Rule 12200 was "one who, while not a broker or dealer, either (1) purchases a good or service from a FINRA member, or (2) has an account with a FINRA member." 761 F.3d 268, 275 (2d Cir. 2014). In *Morgan Keegan & Co. v. Silverman*, the Fourth Circuit concluded that the term "customer" in Rule 12200 refers to an entity that is "not a broker or dealer, who purchases commodities or services from a FINRA member in the course of the member's business activities," namely, "the activities of investment banking and the securities business." 706 F.3d 562, 566 (4th Cir. 2013). The Ninth Circuit defined "customer" as "a non-broker and non-dealer who purchases commodities or services from a FINRA member in the course of the member's FINRA-regulated business activities, i.e., the member's investment banking and securities business activities." *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 741 (9th Cir. 2014). The Eighth Circuit construed "customer" to "refer[ ] to one involved in a business relationship with [a FINRA]

member that is related directly to investment or brokerage services." *Berthel Fisher & Co. Fin. Servs. v. Larmon*, 695 F.3d 749, 752 (8th Cir. 2012) (internal citation omitted).

Courts within and outside this Circuit have enjoined FINRA arbitration proceedings brought by non-customers upon similar facts. In the most recent decision in this Circuit located by Osaic, *Centaurus Fin., Inc. v. Ausloos*, the Eastern District of Wisconsin enjoined a FINRA arbitration when answering an analogous question. No. 19-CV-243, 2019 WL 2027271, at *5 (E.D. Wis. May 8, 2019). In that case, a Wisconsin investor alleged he made an investment in a fraudulent deferred sales trust company recommended by a registered broker of Centaurus Financial and that the broker also had ownership of the allegedly fraudulent deferred sales trust. *Id.* at *2. The *Ausloos* Court recognized the logical distinction that a registered broker may recommend a securities transaction that was not offered through the broker-dealer. The assessment was blunt: "If one does not purchase a good or service from the FINRA member, he is not the FINRA member's customer simply because he purchased the good or service from an "associated person" acting on behalf of his or her own independent company." *Id.* at *5 (emphasis added).

The Fourth Circuit's decision in *Raymond James Fin. Servs., Inc. v. Cary* is also instructive. 709 F.3d 382 (4th Cir. 2013). There, the claimants had invested in a company called Inofin, which was allegedly a Ponzi scheme. *Id.* at 384. Inofin's president had recruited certain individuals, including an employee and associated person of Raymond James and his friend (who was not employed by Raymond James). *Id.* at 383–84. The two solicited investments together and although the claimants alleged that the friend formally solicited their investment, the Raymond James representative received a commission from them. *Id.* The Fourth Circuit rejected these arguments, holding that claimants were "not [RJ] customers because they did not purchase any 'commodities or services' from [RJ] or [broker] in the course of the firm's business activities." *Id.*

at 386–87. The Fourth Circuit reached this conclusion because, among other things, claimants had no accounts with Raymond James, there was "no evidence of any contractual relationship between [claimants] and [RJ] regarding the Inofin transactions," and there was no "evidence that [claimants] ever tendered any funds to [RJ] in connection with those transactions." *Id.* The court was not persuaded by claimants' arguments that they were "customers" either because they were solicited by the Raymond James representatives' alleged partner or because the Raymond James representative received commissions on their Inofin investments. *Id.*

The Northern District of Illinois has recognized that in some instances (such as the facts presented here), an investor's status as a "customer" of an associated person does not automatically compel the FINRA member to arbitrate claims against them. *See Bartolini*, 2003 WL 21148940, at *7. In *Bartolini*, an investor brought a FINRA arbitration against the president and 50% shareholder of broker-dealer World Securities, Inc. ("WSI") <u>but not WSI</u>. *Id.* at *1. After an award was rendered, the president moved to vacate arguing that the claimant was not a customer of WSI, but the court held that claimant need not prove that. *Id.* at *6. In dicta, the court considered whether the claimant would be considered a "customer" of WSI in any event. *Id.* It was during this thought exercise that the court made a critical distinction. "Applying this broad definition here, we find that there is sufficient evidence to show that Bartolini was a customer of WSI. It is important to put this case into perspective. <u>Unlike most cases in this area, which involve a claim by a securities firm that an agent did something without its knowledge or permission, there is no such claim here</u>. In fact, for all practical purposes, Smith and WSI were inseparable as the following undisputed facts illustrate." *Id.* (emphasis added). The *Bartolini* court affirmed the arbitration award because Smith (the registered person) was the president and chairman of WSI and Smith was paid through WSI regarding the investments at issue. *Id.* These facts do not exist here.

Here, the questions presented borrow facts from each of *Ausloos, Raymond James,* and *Bartolini* decisions. As in *Ausloos*, Defendants allege that brokers caused them to engage in private securities transactions with private businesses for which they were personally involved. (*See* **Ex. A**.) Defendants purchased securities from these businesses directly, not through Osaic. Just like in *Raymond James*, no customer relationship was formed because Defendants did not purchase "any service or commodity" from Osaic "during the course of its business activities." 709 F.3d at 388. And just like in *Bartolini*, if brokers did cause Defendants to enter private securities transactions, these securities were offered by those private companies and the transactions both unknown and concealed from Osaic.

Amongst every court that has considered the issue, one thing is consistent: The definition of "customer" must be interpreted in a manner consistent with the "reasonable expectations" of FINRA members. *See Citigroup Glob. Markets Inc.*, 761 F.3d at 274. This case presents a clear example of an arbitration that exceeds the reasonable expectations of Osaic. As the *Ausloos* court held: Defendants argue that if "one has a business relationship with an 'associated person' of a FINRA member, this makes the person a customer of the FINRA member. <u>This cannot be correct</u>." 2019 WL 2027271, at *5 (emphasis added).

As set forth above, Osaic has a strong likelihood of success on the merits.

**B. Osaic Will Suffer Irreparable Harm Absent an Injunction and Legal Remedies Would be Insufficient.**

Courts across the country, including those within this jurisdiction, have held that "forcing a party to arbitrate a dispute that it did not agree to arbitrate constitutes per se irreparable harm, as time and resources spent in arbitration are not compensable by a monetary award." *Interactive Brokers, LLC v. Duran*, No. 08-CV-6813, 2009 WL 393827, at *5-6 (N.D. Ill. Feb. 17, 2009) (citing *Chicago School Reform Board of Trs. v. Diversified Pharm. Servs., Inc.*, 40 F. Supp. 2d

987, 996 (N.D. Ill. 1999)); *see also McLaughlin Gormley King Co. v. Terminix Int'l Co.*, 105 F.3d 1192, 1194 (8th Cir. 1997) (citations omitted).

In the absence of an injunction, Osaic will be irreparably harmed. Unless Defendants are enjoined from arbitrating with Osaic, Osaic will have to litigate the FINRA Arbitration through conclusion with Defendants that Osaic never agreed to arbitrate any claim. The FINRA Action is set for final hearing in December of this year. Injunctive relief is necessary to prevent Osaic from further being stripped of its legal rights.

Moreover, there is no adequate remedy at law to compensate Osaic for its loss of right to have this dispute heard and decided by a court of competent jurisdiction. If forced to arbitrate and waive its right to be heard in the forum, Osaic will lose its right to important pre-trial discovery, its ability to file dispositive motions, its right to have this matter decided by a jury, and/or its right to have the Court hear and decide this matter. Any remedy at law is inadequate and would be seriously deficient.

### C. The Balance of Hardships Favors Granting a Preliminary Injunction.

In analyzing the balance of hardship, the Court must determine whether the identified irreparable harm to the movant outweighs the harm to the opposing party if the preliminary injunction is granted. *See Davis v. Mineta*, 302 F.3d 1104, 1116 (10th Cir. 2002). Forcing Osaic to arbitrate Defendants' claims where there is no legal basis to do so will deprive Osaic of its rights to defend itself of these claims in a court that provides far more substantive defense mechanisms such as depositions, motions for summary judgment and expanded discovery rights, and of course the constitutional right to a jury trial. That alone would leave Osaic without an adequate remedy at law. *See Duthie v. Matria Healthcare, Inc.*, 535 F. Supp. 2d 909, 924–25 (N.D. Ill. 2008)

("Depriving a party of its Constitutional right to a jury trial leaves that party with no adequate remedy at law.").

If the Court grants Osaic's motion, Defendants will still be afforded the opportunity to pursue their claims in a court of law. However, should Osaic be compelled to improperly arbitrate, it will be forced to surrender its rights to have its claims fairly and justly heard in a court of law.

**D. Public Policy Favors Issuing a Preliminary Injunction.**

Arbitration preference only applies where the parties have agreed to submit their disputes to arbitration. *Berthel Fisher & Co. Fin. Servs. v. Larmon*, No. 11-889, 2011 WL 3294682 at *8 (D. Minn. Aug. 1, 2011) (citing *AT&T Techs., Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 648 (1986)). Public confidence in arbitration would be undermined if a party could be compelled to arbitrate without its consent because it is equally important that "arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.* (internal quotations omitted). Forcing parties to arbitrate when they did not agree to arbitrate would generate powerful disincentives to participate in arbitration and would lower the public's confidence in arbitration as an avenue for dispute resolution. *See Morgan Keegan & Co., Inc. v. Louise Silverman Trust*, No. JFM-11-2533, 2012 WL 113400, at *6 (D. Md. Jan. 12, 2012), *aff'd sub nom. Morgan Keegan & Co., Inc. v. Silverman*, 706 F.3d 562 (4th Cir. 2013); *see also Berthel Fisher*, 2011 WL 3294682, at *8 ("Public confidence in arbitration would be undermined if a party could be compelled to arbitrate without its consent."). Here, injunctive relief will serve the public interest by minimizing the risk that Osaic will suffer the inconvenience and cost associated with arbitrating a dispute it did not agree to arbitrate, while also preserving the Defendants' rights to adjudicate their claims against Osaic in court, should they choose to do so.

### E. Bond is Not Necessary Because No Foreseeable Economic Harm Exists as to Defendants.

Osaic respectfully requests that the Court waive the requirement of a bond under Fed. R. Civ. P. 65(c) as the potential harm to Defendants in granting the requested preliminary injunction is non-existent and at best minimal and there is no foreseeable economic harm. *See Centaurus Fin.*, 2019 WL 2027271, at *6 (quoting *Edward E. Gillen Co. v. Ins. Co. of the State of Pennsylvania*, 747 F. Supp.2d 1058, 1062 (E.D. Wis. 2010)) ("A bond is generally unnecessary where there has been no proof of likelihood of harm, or where the injunctive order was issued to aid and preserve the court's jurisdiction over the subject matter involved.") (internal quotation and citation omitted).

## CONCLUSION

For the foregoing reasons, Osaic seeks an order for preliminary injunction enjoining Defendants during the pendency of this Action from pursuing claims against Osaic in the FINRA Arbitration, together with such other and further relief as the Court may deem just and proper.

Respectfully submitted this 10th day of February, 2025.

*/s/ Alison S. Cooney*
Alison S. Cooney (Illinois Bar No. #6312577)
**NELSON MULLINS RILEY SCARBOROUGH LLP**
123 N. Wacker Drive, Suite 2100
Chicago, IL 60606
(312) 376-1023
alison.cooney@nelsonmullins.com

Scott N. Sherman (*pro hac vice*)
**NELSON MULLINS RILEY SCARBOROUGH LLP**
201 17th Street NW, Suite 1700
Atlanta, Georgia 30363
scott.sherman@nelsonmullins.com

*Attorneys for Plaintiff Osaic Wealth, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 10, 2025, I electronically filed OSAIC WEALTH, INC.'S MOTION FOR PRELIMINARY INJUNCTION with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all attorneys of record, and sent a copy of the foregoing document via first class mail, postage prepaid, addressed to:

GANA WEINSTEIN LLP
Adam J. Gana
Adam J. Weinstein
345 Seventh Avenue
21st Floor
New York, New York 10001
Tel: (212) 776-4252

KURTA LAW
Jonathan Kurta
Robert Van De Veire
Hannah Ross
295 Madison Avenue, Suite 705
New York, New York 10017
Tel: (212) 658-1502

Dated this 10th day of February, 2025

*/s/ Alison S. Cooney*
Alison S. Cooney