**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| OSAIC WEALTH, INC.,<br><br>Plaintiff,<br>v.<br><br>CHRISTOPHER AMBROSE AND JEAN AMBROSE, AS TRUSTEES OF THE JEAN AMBROSE AND CHRISTOPHER AMBROSE TRUST, GWEN GORMAN, ROBERT GORMAN, THOMAS HARROLD, CARL PEDIGO, AND JOHN STRATTON,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO. 1:24-cv-12657 |

**PLAINTIFF OSAIC WEALTH INC.'S MOTION FOR PROTECTIVE ORDER AND TO COMPEL DEPOSITIONS; AND REQUEST FOR STATUS CONFERENCE**

Plaintiff Osaic Wealth, Inc. (f/k/a Triad Advisors, LLC ("Triad")), through undersigned counsel and pursuant to Federal Rules of Civil Procedure 26 and 37 and N.D. Ill. L.R. 37.2, moves for (i) a protective order limiting the scope of Defendants' improper requests for production of documents and interrogatories; (ii) a protective order to ensure Defendants do not improperly broaden the scope of the limited deposition topics at issue in this matter; and (iii) an order compelling three in-person depositions in Chicago (rather than virtually as requested by Defendants) within the time period ordered by the Court.

Triad further requests an expedited status conference regarding the same to aid the Court in its speedy resolution of these discovery disputes so that the parties can comply with the current schedule outlined by the Court at the hearing held on February 19, 2025. In support of the requested relief, Triad states as follows:

## I. INTRODUCTION

As the Court will recall, it issued very limited discovery obligations on the parties to expedite service of discovery requests with a two-week response period, a limited deposition schedule and then prompt final briefing at the end of April so that the Court could issue an Order on Triad's Motion for Preliminary Injunction. At the hearing, Defendants' counsel expressed their dissatisfaction with the Court's ruling permitting limited discovery, and the Court admonished counsel for the same. Now, rather than work within the limited discovery framework outlined by the Court that came as a result of Defendants' own arguments, Defendants have attempted to abuse the process by seeking not only merits-based discovery that is only relevant in the underlying FINRA arbitration well beyond the limited discovery ordered by the Court but also expansive discovery of all communications between Triad and their advisors as well as any and all documents produced not only in the underlying FINRA Arbitration but a separate unrelated FINRA Arbitration.[1] Furthermore, Defendants have refused to produce three of the Defendants for in-person deposition, only agreeing to virtual depositions even though three Defendants all live in Chicago. Defendants now plan to file a Motion seeking a Court Order requiring that depositions be conducted remotely.

Defendants' actions with respect to discovery are a clear abuse of the Court's clear instructions and Order at the February 19 hearing discussed below. Triad requests the Court order Defendants to comply with the Court's prior Order and award attorney's fees and costs incurred by Triad based on Defendants' improper actions.

---

[1] Defendants attempt to use this expedited discovery procedure to conduct all discovery in the underlying FINRA arbitration. They are not only seeking full merits-based discovery through document requests but also served interrogatories on the same issues. Notably, FINRA doesn't permit interrogatories.

This court action seeks to enjoin Defendants'[2] improper efforts to force Triad to arbitrate claims against it in the underlying FINRA arbitration proceeding (hereinafter "the FINRA Arbitration") where there is no evidence that any Defendant had a customer relationship directly with Triad. (ECF 12 ⁋ 1). On the heels of Triad's operative pleading (ECF 12), Triad filed its Motion for Preliminary Injunction (the "Motion"), arguing that the Court should enjoin Defendants from pursuing their claims in the FINRA Arbitration or Triad would suffer irreparable harm. (ECF 20).

On February 19, 2025, the Court held a hearing where the matters of scheduling and need for discovery were discussed. *See* Minute Entry (ECF 24); Transcript (ECF 25). The Court heard from Defendants on the very limited factual issues at play in this proceeding, namely Defendants' claim that because Defendants allege a business relationship with one advisor and that they purchased the investment(s) at issue from that advisor, then Defendants can force Triad to arbitrate in the FINRA forum even without a direct customer relationship with Triad. (ECF 25 15–16). Triad contests the claim that Defendants had established the existence of a customer relationship with either of the advisors as alleged, and even assuming they had, contest that Triad can nonetheless be forced to arbitrate against the Defendants who were not its customers. (ECF 20 pp. 11–15); (ECF 25 p. 4–6). Triad confirmed at the hearing and in its papers that there is no evidence of a direct customer relationship with Triad by any of Defendants. (ECF 20 p. 12); **(**ECF 25 p. 26 (confirming the document, email and key-term search conducted by Triad)). Given the parties'

[2] As discussed in Triad's moving papers and at the hearing, the underlying FINRA Arbitration involves approximately twenty Claimants that are suing Triad. Triad determined that several of those Claimants did, in fact, have customer relationships with Triad and thus Triad has not contested arbitrability as to them. Following an extensive good-faith search for evidence of a direct customer relationship between Defendants and Triad, it was determined that none existed. Defendants have also not produced any evidence of a direct customer relationship with Triad. Accordingly, Triad should not be forced to arbitrate against Defendants as arbitration is a creature of contract and FINRA Arbitration Rules only require a broker-dealer to arbitrate against its own customers. Facts supporting a customer relationship do not exist here.

positions, the Court ordered the parties with respect to limited discovery to produce any documentation evidencing a customer relationship with either of the advisors or Triad, stating that only "[d]iscovery requests limited to the relationship of the defendants and Walesa and Luccioni" were permitted. *See* (ECF 24).

Despite this, Defendants have attempted to abuse the discovery process through their service of discovery requests and interrogatories dated March 10, 2025 that are well beyond the limited scope ordered by the Court.[3] *See* Defendants' First Document Requests attached as Exhibit A; *See* Defendants' First Set of Interrogatories attached as Exhibit B. Not so. Defendants request information entirely beyond the scope of the limited discovery ordered by the Court and that is neither relevant to the subject matter of the current action nor reasonably calculated to lead to the discovery of admissible evidence.

---

[3] In the meet and confer process, Defendants' counsel has stated that their discovery requests are proper because they are seeking discovery on the "business activity" of Triad. They misuse the relevant FINRA Rule to seek improper discovery. Under Rule 12200, arbitration is required when: "The dispute is between a customer **and** a member or associated person of a member; **and** [t]he dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company." FINRA Rule 12200 (emphasis added). Here, there is no customer relationship with Triad as shown by both parties so Defendants cannot even meet the first prong of the Rule. Yet, in essence, Defendants attempt to sever the "business activities" language from the Rule, arguing that they are entitled to incredibly broad discovery on all of Triad's business activities with the Walesa branch office generally and the investments they identify their discovery. This is not what the Rule says and not what the Court ordered at the February 19 hearing.

The Court ordered very limited discovery on whether there was any direct customer relationship with either the advisors or Triad. Now, Defendants try to re-write what is at issue, ignore the Order and say they need any and all documents of the entirety of Triad's relationship with the advisors and/or a long list of investments identified in their discovery requests. Their efforts here are improper. There is no interpretation of the Rule that allows discovery into all of Triad's business generally related to Walesa branch office. The analysis under Rule 12200 is first whether the dispute involves a customer of Triad, and only if there is a customer relationship then the Court assesses the second prong whether the dispute arises in connection with the specific activity of the broker-dealer and that customer. The issue is customer specific and any discovery is customer specific. As there is no direct customer relationship with Triad, one does not even get to the second prong of business activity. In any event, Defendants' efforts to dramatically expand discovery into all of the requests outlined herein is far beyond what the factual issue at hand and should be rejected by the Court.

In sum, the only appropriate discovery request at this preliminary juncture, and on this truncated schedule, is for the production of information Defendants claim establish a direct customer relationship between Defendants and the advisors and/or Triad and Defendants—nothing more. (ECF No. 24). Defendants have disregarded the Court's Order with respect to discovery as evidenced by their improper document requests and interrogatories. After multiple efforts seeking Defendants to withdraw their improper requests, which were ignored, Triad was forced to serve responses to Defendants' discovery requests. Triad now understands that Defendants will attempt to drag out this discovery charade further with more time and expenses wasted through motion to compel practice. Triad files this preemptive request in the hopes the Court will help the parties avoid such issues and ensure discovery is limited as the Court originally directed on February 19.

## II. ARGUMENT

### A. This Court Should Enter a Protective Order Reinforcing the Scope of Discovery.

Pursuant to Fed. R. Civ. P. 26, a party attempting to avoid discovery may move for a protective order. *See* Fed. R. Civ. P. 26 (c). Rule 26 provides that "any non-privileged matter that is relevant to any party's claim or defense" is discoverable, and yet courts have broad discretion in restricting discovery requests that are unreasonably burdensome. *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 679 (7th Cir. 2002); Fed. R. Civ. P. 26(b)(1). "The party requesting a protective order has the burden of demonstrating to the court that 'good cause' exists for its issuance." *FTC v. Advocate Health Care Network,* 162 F. Supp. 3d 666, 667 (N.D. Ill 2013) (citation omitted). Good cause is demonstrated where the movant sets forth specific factual allegations that a request for discovery will result in "annoyance, embarrassment, oppression, or undue burden or expense." *See Global Mat. Tech., Inc. v. Dazheng Metal Fibre Co., Ltd.*, 133 F.

Supp. 3d 1079, 1084 (N.D. Ill 2015); Fed. R. Civ. P. 26(c)(1). Triad has demonstrated good cause for the reasons set forth below.

Defendants' counsel's dissatisfaction with the Court's Order permitting discovery does not excuse these discovery tactics seeking improper discovery requests. Defendants served sixteen requests for production and thirteen interrogatories on Triad. *See* Exs. A and B.

**i. Protective Order over Document Requests 2-16.**

Triad seeks an order protecting it from responding to and producing documents in response to document requests 2-16.

Only one of the document requests (request number 1) is within the scope of permitted discovery because it requests documents relating to Defendants and goes to the existence of a customer relationship. *See* Ex. A at Request No. 1 ("All documents referring or relating to the Defendants, including, without limitation, files, communications to, from, or relating to Defendants, executed agreements, draft agreements, documents created by Defendants or with his assistance, and any oral agreements referring or relating to the Defendants and/or between you and the Defendants."). The remaining document requests are outside the scope of permissible discovery and subject Triad to annoyance, embarrassment, oppression, and undue burden or expense.

For example, Defendants seek all documents "relating to the Investments, including research reports, performance or risk data, prospectuses, other offering documents, analyses, diligence files" (Ex. A, Request No. 2); all "supervisory and compliance manuals in effect during the time period 2010 through 2024" (Ex. A, Request No. 5); and all communications with the "Financial Industry Regulatory Authority, or any other securities regulator, referring or relating to the Investments or the Brokers" (Ex. A, Request No. 7). These requests have nothing to do with

Defendants or the existence of a customer relationship. Instead, Defendants are seeking production of merits-based issues on due diligence of the investments (not even limited to those purchased by Defendants), regulatory inquiries, and supervisory and compliance procedures. Particularly egregious, in document request number 16, Defendants seek production of "All documents produced by any party in the FINRA Arbitrations captioned *Richard Mertz, et al. v. Triad Advisors LLC v. Debra L. Biosca* (FINRA No. 23-03651) and *Michael Zima, et al. vs. Triad Advisors LLC* (FINRA No. 24-01626)." (Ex. A, Request No. 16). This request seeks production of all documents produced by any party not only in this underlying FINRA arbitration but another one. The remaining requests are equally overbroad, unduly burdensome, and beyond the scope of this limited, permissible discovery.

**ii. Protective Order Over Interrogatories 1-5, 8-9, and 12-13.**

Triad seeks an order protecting it from responding to interrogatories 1-5, 8-9, and 12-13. These interrogatories create the same issues as the document requests—seeking discovery far beyond answering the limited question of whether there was a relationship between each Defendant and the advisors or Triad.

- **Interrogatory 1** asks when Triad first became aware of the Investments.
- **Interrogatory 2** asks when Triad first became any of the advisors were first allegedly selling any of the Investments.
- **Interrogatory 3** asks about any agreement Triad had related to any of the Investments.
- **Interrogatory 4** asks about Triad's efforts generally to supervise the sale of any of the Investments.
- **Interrogatory 5** asks about Triad's supervisory manuals.

- **Interrogatories 8 and 9** ask if and/or when FINRA asked Triad about any of the Investments and who from Triad was involved.
- **Interrogatory 12** asks about who, if anyone, approved any of the Investments.
- **Interrogatory 13** is multi-part, focused on whether Triad approved the Investments as outside business activities, another section asking about Triad's compliance manuals and another section asking about supervision.

*See* Ex. C. All of these requests directly violate the Court's Order and are not only vastly beyond the scope of discovery but also are a clear effort to seek information that in some instances are solely merits-based in the underlying FINRA Arbitration and in other instances are so egregiously broad that Triad could never reasonably respond to them. In addition to the issuance of a protective order, Defendants should be admonished for serving these discovery requests.

**iii. A Protective Order Limiting the Scope of Depositions is Also Required to Ensure Compliance with this Court's Order.**

The protective order sought does not only protect Triad from the improper discovery referenced above but also it ensures discovery will be completed within the time period set by the Court on February 19. Moreover, it will ensure that Defendants do not misuse the forthcoming depositions. Defendants seek to depose two witnesses: (i) Debbie Biosca, the former sales assistant for Jim Walesa and (ii) Greg Curley, Triad's in-house counsel where Claimants seek to depose him as a records custodian.

At the February 19 hearing, Defendants' counsel made it clear that the sole purpose of deposing Ms. Biosca was to determine whether she could establish that any of the Defendants were customers of Walesa or Triad. Based on the discovery requests Defendants have served, Triad is highly concerned that Defendants will attempt to ask questions well beyond the scope of the

limited topic the Court ordered in February. *See* (ECF 25 p. 23). A protective order limiting the scope of the deposition of Ms. Biosca to this topic is therefore necessary.

The other deposition Defendants seek is a record custodian, Greg Curley. As discussed at the hearing, the scope of Mr. Curley's deposition is limited to the efforts Triad undertook to find documentation confirming whether Defendants were direct customers of Triad. *See* (ECF 25 p. 26). Now, Defendants have stated they will not depose Mr. Curley until every last document is produced as requested. *See* Email of Claimant's counsel attached as Exhibit C. Triad needs a protective order to ensure Defendants are reined in and limited in their questioning solely to the issue ordered by the Court—efforts to search for documentation whether a customer relationship exists between Triad and any Defendant. At bottom, Triad's request is only that the Court enter an order reinforcing the limitations on the discovery that have already been imposed. Triad makes this request for the sake of an expeditious resolution of Triad's Motion for Preliminary Injunction.

**B. <u>This Court Should Compel Defendants to Schedule In-Person Depositions of Thomas Harold, Carl Pedigo, and Gwen Gorman.</u>**

"A party may file a motion to compel discovery . . . where another party fails to respond to a discovery request or where the party's response is evasive or incomplete." *Wilstein v. San Tropai Condo. Master Ass'n*, 189 F.R.D. 371, 375 (N.D. Ill 199) (citing Fed. R. Civ. P. 37(a)(2)–(3)). Courts are provided with broad discretion in ruling on a motion to compel discovery. *Id.* (citing *Bobkoski v. Bd. of Educ. Of Cary Consol. Sch. Dist. 26*, 141 F.R.D. 88, 90 (N.D. Ill. 1992)). "In ruling on motions to compel discovery, 'courts have consistently adopted a liberal interpretation of the discovery rules.'" *Id.* (quoting *Community Sav. And Loan Ass'n v. Fed. Home Loan Bank Bd.*, 68 F.R.D. 378, 381 (E.D. Wisc. 1975)). Rule 37 further authorizes the "award of the expenses incurred in obtaining an order to compel, including attorney's fees." *Stookey v. Teller Training Distribs.*, 9 F.3d 631, 637 (7th Cir. 1993); Fed. R. Civ. P. 37(a)(5). Triad is entitled to the discovery

authorized by the Court, including the depositions of the named Defendants, and an award of the costs incurred in obtaining this relief.

The Court permitted Triad to depose five of the seven named Defendants in this action for the limited purposes of ascertaining the existence of a customer relationship, accounting for the Court's instruction that only one Ambrose and one Gorman Defendant could be deposed. (ECF 24). The parties have agreed to conduct two depositions remotely. *See* Ex. C. That said, after weeks of discussions with Defendants' counsel, however, Defendants have stated that they will not commit to scheduling the remaining three depositions in person and plan to file a Motion for Virtual Depositions. *See* Ex. C. These three Defendants are all located in Chicago, and Triad confirmed they would conduct all three depositions on April 9 in Triad's counsel's Chicago office. Opposing counsel refused, confirming it would only agree to hold those depositions virtually. The Court set a very short time period to complete expedited discovery as there is a very limited discovery issue at hand. *See* (ECF 24). The law does not support their argument demanding virtual depositions.

As the law makes clear, Triad has the right to in-person depositions as that is the most beneficial means to go over the information here, including any and all documents and declarations**.** *See SEC v. Skerry*, 2019 WL 117607, at * 5 (S.D. Ind. Jan. 7, 2019) ("Court disfavor remote depositions and generally allow them only if the deposed party shows that it would suffer 'undue hardship' in attending the deposition.") (citations omitted). Triad originally requested all depositions take place in person. However, with one witness in Florida (Defendant Jean Ambrose) and one in Texas (Defendant John Stratton), Triad agreed to hold those depositions virtually. However, the remaining three Defendants that Triad intends to depose live in Chicago, and as noted above Triad has offered to hold all three on the same day in Triad's counsel's Chicago office

where Triad's counsel would travel to Chicago from out of state to hold those depositions. As noted above, Triad offered April 9, 2025 as a proposed date for these in-person depositions and asked for other dates as well. Opposing counsel refuses to have his three clients appear, citing that he is out of state apparently all of April and cannot agree to one day to hold the depositions in person. Defendants of course have numerous counsel that have entered appearances in this case. Furthermore, Triad has offered other dates as well within the window for depositions ordered by the Court—but opposing counsel still refuses to conduct the three depositions in-person in Chicago.

Defendants have indicated their intent to file a motion requesting an order to compel remote depositions of the remaining three Defendants, and Triad will oppose that request in a separate filing. Their argument for deposing Defendants Thomas Harrold, Carl Pedigo and Gwen Gorman remotely is meritless. The Court should require them to appear in person on April 9, 2025. If that date does not work for all of Defendants' counsel, the Court should order Defendants' counsel to provide numerous proposed dates in the time period previously ordered by the Court for depositions to be completed.

The Court, therefore, should enter an order compelling Defendants to produce witness and move forward with scheduling depositions to avoid further delay. Triad requests an award of costs incurred in obtaining this relief pursuant to Fed. R. Civ. P. 37(a)(5), including attorney's fees.

## III. CONCLUSION

In light of the foregoing, Triad respectfully requests that the Court enter (i) a protective order limiting the scope Defendants' overbroad requests for production of documents and interrogatories; (ii) a protective order to ensure Defendants do not improperly broaden the scope of the limited deposition topics at issue; and (iii) an order compelling the depositions of

Defendants. Pursuant to Fed. R. Civ. P. 37(a)(5), Triad requests an award of attorney's fees and costs incurred in obtaining this relief.

## REQUEST FOR STATUS CONFERENCE

Triad believes that an expedited status conference to address the foregoing issues would assist the Court's speedy resolution of these discovery matters and would help to clarify Defendants' discovery obligations going forward. Triad will accommodate the Court's calendar in the scheduling thereof.

## CERTIFICATE OF GOOD FAITH CONSULTATION

Pursuant to N.D. Ill. L.R. 37.2, the undersigned certifies that, following consultation and good faith attempts to resolve their differences, the parties were unable to reach an accord. The parties' good faith consultation occurred, via electronic communication and verbally the week of March 17, 2025. Prior to filing this Motion, Triad's counsel, again, consulted with opposing counsel via email on March 24, 2025, and opposing counsel maintained his position that the scope of Defendants' discovery requests was appropriate, resulting in an impasse.

Respectfully submitted this 24th day of March, 2025.

*/s/ Alison S. Cooney*
Alison S. Cooney (Illinois Bar No. #6312577)
**NELSON MULLINS RILEY SCARBOROUGH LLP**
123 N. Wacker Drive, Suite 2100
Chicago, IL 60606
(312) 376-1023
alison.cooney@nelsonmullins.com

Scott N. Sherman (*pro hac vice*)
**NELSON MULLINS RILEY SCARBOROUGH LLP**
201 17th Street NW, Suite 1700
Atlanta, Georgia 30363
scott.sherman@nelsonmullins.com

*Attorneys for Plaintiff Osaic Wealth, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 24, 2025, I electronically filed PLAINTIFF OSAIC WEALTH INC.'S MOTION FOR PROTECTIVE ORDER AND TO COMPEL DEPOSITIONS; AND REQUEST FOR STATUS CONFERENCE with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all attorneys of record, and sent a copy of the foregoing document via first class mail, postage prepaid, addressed to:

GANA WEINSTEIN LLP
Adam J. Gana
Adam J. Weinstein
345 Seventh Avenue
21st Floor
New York, New York 10001
Tel: (212) 776-4252

KURTA LAW
Jonathan Kurta
Robert Van De Veire
Hannah Ross
295 Madison Avenue, Suite 705
New York, New York 10017
Tel: (212) 658-1502

Dated this 24th day of March, 2025

*/s/ Alison S. Cooney*________________
Alison S. Cooney